MARK BOUGAS & others *vs.* CHIEF OF POLICE OF LEXINGTON
& others.[1]

Middlesex.    May 6, 1976. — September 13, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, & KAPLAN, JJ.

*Public Record. Police. Statute,* Construction. *Municipal Corpora-
tions,* Public records. *Words,* "Public record."

Under G. L. c. 66, § 10, as amended through St. 1973, c. 1050, § 3, the
custodian of public records sought for inspection has the burden of
persuasion to demonstrate that the records fall within a specific
statutory exemption to the general rule of public disclosure. [61-62]
Where it appeared that certain records, including police reports and
letters to the police from private citizens, sought for inspection pur-
suant to G. L. c. 66, § 10, were prepared and gathered by police
officers in connection with a criminal investigation, the records were
exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth [62-63];
neither the fact that the reports had been disclosed to a limited
group of persons nor the fact that the investigation had been con-
cluded destroyed the exemption [63].
The fact that the plaintiffs sought disclosure of certain police records
in order to prepare a defense in a criminal trial was irrelevant to
their right to disclosure of these records under G. L. c. 66, § 10, and
did not affect the exemption for investigatory materials in c. 4, § 7,
Twenty-sixth. [64]
The requirement of G. L. c. 66, § 10, that the custodian of records
sought to be disclosed must "prove with specificity" any applicable
exemption does not require an in camera examination by a judge of
all documents for which an exemption is claimed [64-65]; however,
G. L. c. 4, § 7, Twenty-sixth, does not provide a blanket exemption
for every document contained in police files, and on doubtful ques-
tions an in camera examination may be appropriate [65-66].
Where a Superior Court judge ruled that all records in a police chief's
custody relating to a particular incident sought to be disclosed un-
der G. L. c. 66, § 10, were exempt from disclosure under c. 4, § 7,
Twenty-sixth, but the record supported the judge's ruling only with
respect to police reports and certain letters from citizens, the case
was remanded to determine which, if any, of the other documents
sought for disclosure fell within any statutory exemption. [66]

---

[1] The other defendants are the town manager and the board of
selectmen.

CIVIL ACTION commenced in the Superior Court on June 5, 1975.

The case was heard by *Zarrow,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Erik Lund* (*Ernest Winsor* with him) for the plaintiffs.

*Jeffrey F. Jones* for the defendants.

REARDON, J. This is an action brought under G. L. c. 66, § 10, for an order in the nature of mandamus to compel the defendants to give the plaintiffs access to certain records maintained by the defendants. It appears that on the night of May 2, 1975, Lexington police officers aided by policemen from Bedford and Burlington attempted to disperse persons present at the home of the plaintiff Terry Brenner on Adams Street in Lexington. In the attempt at dispersal, injury occurred to a number of persons including several bitten by a police dog. Three of the plaintiffs were charged with misdemeanors as a result of the incident, and those charges were pending in a District Court when this action was tried in the Superior Court. During the course of the police investigation of the incident, written reports came to the chief of police (Corr) from members of the Lexington, Burlington and Bedford police departments who had been present at the incident. Corr received additional reports from other police officers and also letters from other citizens about the incident. The police investigation was concluded prior to May 21, 1975. Certain of the reports collected by the police chiefs and by Corr were provided to the Lexington town manager and the board of selectmen. Several police reports were shown to the editor of the local newspaper and portions of them were printed in that newspaper on May 8, 1975. Several reports were likewise shown to a participant in a League of Women Voters' workshop.

On May 22, 1975, the plaintiffs' attorney sought by letter to Corr permission for the plaintiffs to inspect or copy all "public records," as that term is defined in G. L. c. 4, § 7, Twenty-sixth, as amended through St. 1973,

c. 1050, § 1. The chief denied the request on May 27, and thereafter the plaintiffs brought this action.

The case was heard before a Superior Court judge who made findings, rulings and an order to the effect that the documents sought by the plaintiffs were investigatory materials "necessarily compiled out of the public view by law enforcement officials and that the disclosure would prejudice the possibility of effective law enforcement." He ruled that Corr had "overcome the presumption that the record sought is public and has proved with specificity that the materials and data sought from him qualify for exemption under G. L. c. 4 § 7 Clause 26 (f)."[2] We may reverse the judge only if his findings are "clearly erroneous" (Mass. R. Civ. P. 52 [a], 365 Mass. 816 [1974]), or his rulings are tainted with some error of law. In this instance we do not do so.

General Laws c. 66, § 10, as amended through St. 1973, c. 1050, § 3, provides in subsection (*c*), "In any court proceeding pursuant to paragraph (*b*), there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies." This places the burden of persuasion on the custodian of the records, in this case the chief of police of Lexington, to demonstrate that the records sought come within some specific statutory exemption to the general rule of public disclosure. The exemption provided in G. L. c. 4, § 7, Twenty-sixth, recognizes that the disclosure of certain investigatory materials could de-

---

[2] "Twenty-sixth, 'Public records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division, or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions in that they are: ... (*f*) investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest ...."

tract from effective law enforcement to such a degree as to operate in derogation, and not in support, of the public interest. Included among the purposes in providing this exemption would be the avoidance of premature disclosure of the Commonwealth's case prior to trial, the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions.

We have reviewed the evidence and we are satisfied that the police reports which were sought were prepared by police officers in connection with their investigation of an incident which led to criminal proceedings. Furthermore, there was evidence introduced concerning the nature and scope of police reports which indicated that such documents provide complete accounts of police investigatory efforts including the police officer's own observations of the incident in question, statements taken from witnesses, additional information obtained from other sources, some confidential, and leads and tips to be pursued. In addition, a continuing investigation may produce supplemental reports as new avenues of information are opened up to inquiring police officers. It would appear that in the town of Lexington the police reports are the basic working documents of the police force's investigatory programs. It is entirely appropriate in the furtherance of the interests the exemption in c. 4, § 7, Twenty-sixth (*f*), recognizes that the investigatory process be shielded to the extent that police reports of a nature described in the present record be exempted from the general requirement of disclosure. To subject such reports to public disclosure would in the terms of the statute "probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest...." G. L. c. 4, § 7, Twenty-sixth (*f*).

We are of a similar view with respect to the letters sent to the police by private citizens concerning the Brenner party. Police departments must depend on reports from private citizens concerning possible illegal activity and the collection of such communications is an important and entirely legitimate law enforcement function. See *Koch* v. *Department of Justice,* 376 F. Supp. 313, 316 (D.C. Cir. 1974). Disclosure of the letters of persons who volunteer information to police would have a harmful effect in the normal operation of law enforcement investigation. There was no error in failing to order disclosure of the citizen letters in this case.

The defendants have cited to us a number of Federal cases dealing with comparable statutory language in the Freedom of Information Act, 5 U.S.C. § 552 (b) (7) (Supp. IV 1974), amending 5 U.S.C. § 552 (b) (7) (1970), establishing exemptions. In these cases it was made clear that materials, such as the police reports and citizen letters involved in the present case, were exempt from disclosure under the Federal statute. See *Frankel* v. *Securities & Exch. Comm'n,* 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889 (1972); *Evans* v. *Department of Transp. of United States,* 446 F.2d 821 (5th Cir. 1971); *Koch* v. *Department of Justice,* 376 F. Supp. 313 (D.C. Cir. 1974).

We also agree with the judge that the disclosure of the police reports to a limited group of persons does not destroy the exemption to be found in G. L. c. 4, § 7, Twenty-sixth. Nor does the fact that the investigation to which these materials related had been concluded destroy the exemption. As was pointed out in *Aspin* v. *Department of Defense,* 491 F.2d 24, 25 (D.C. Cir. 1973), if an agency's investigatory files were obtainable without limitation after the investigation was concluded, future law enforcement efforts by the agency could be seriously hindered. Even materials relating to an inactive investigation may require confidentiality in order to convince citizens that they may safely confide in law enforcement officials. See *Koch* v. *Department of Justice, supra* at 315.

We also note that at the time this action was commenced, some of the plaintiffs had been charged with criminal offenses stemming from the Brenner party. We are of opinion that this fact neither detracts from nor lends support to the request of those plaintiffs for disclosure under G. L. c. 66, § 10. It appears that the statute does not provide a "standing" requirement but extends the right to examine public records to "any person" whether intimately involved with the subject matter of the records he seeks or merely motivated by idle curiosity. Nor do we read the exemption in § 7, Twenty-sixth (*f*), for certain investigatory materials as discriminating among persons seeking disclosure. The plaintiffs in this case, as criminal defendants, might and probably did have a need for disclosure more pressing and more immediate than that of the general public. Indeed it seems clear from the plaintiffs' complaint that the prime reason for inspection of these records was in preparation of the defense in a criminal trial. However, such discovery should follow normal procedures in criminal cases where its availability lies in the discretion of the trial judge under standards developed by this court. See *Commonwealth* v. *Lewinski*, 367 Mass. 889, 900-903 (1975). It is sufficient to say that pre-trial discovery is not available to defendants in criminal cases under G. L. c. 66, § 10, and that the position of the plaintiffs under the latter statute is not enhanced by the lodging of criminal charges against them.

Finally, the plaintiffs apparently argue that the requirement that the custodian of the records sought must "prove with specificity" (G. L. c. 66, § 10 [*c*]) any applicable exemption necessitates an in camera inspection by the judge of all documents for which an exemption is claimed, and that since the Superior Court judge based his findings and rulings on oral testimony and not on personal inspection of the challenged documents he did not discharge properly his obligation under the statute. With this interpretation we do not agree. The specificity requirement applies to all nine exceptions provided in subsections

$(a)$-$(i)$ of G. L. c. 4, § 7, Twenty-sixth. Furthermore, as indicated above, there does not appear to be any standing requirement as to persons seeking disclosure under G. L. c. 66, § 10. Any member of the public may invoke its provisions without a showing of need which, under the plaintiffs' interpretation, might require that large numbers of documents be brought before a Superior Court judge for individual in camera examination. Such an interpretation is not required by the terms of the act and, given the congested state of affairs in the Superior Court of the Commonwealth, a situation of which we take judicial notice, and the significant increase in work load for Superior Court judges necessitated by such a scheme, this interpretation will not be assumed absent a clear expression of legislative intent. We are inclined to agree with the United States Supreme Court in interpreting the Federal Freedom of Information Act (5 U.S.C. § 552 [1970]) that "[p]lainly, in some situations, in camera inspection will be necessary and appropriate. But it need not be automatic." *EPA* v. *Mink*, 410 U.S. 73, 93 (1973).

In this case there was competent evidence, outlined above, concerning the nature and significance of police reports and citizen letters sufficient to allow the trial judge to conclude that those documents were within the exemption provided in § 7, Twenty-sixth $(f)$. We do not think the specificity requirement is violated by a ruling that an exemption is available for a certain carefully defined class of documents, such as police reports prepared as part of an investigation leading to criminal proceedings. On the other hand, an agency such as a police department cannot simply take the position that, since it is involved in investigatory work and some of its records are exempt under the statute, every document in its possession somehow comes to share in that exemption. There is no blanket exemption provided for records kept by police departments nor does the investigatory materials exemption extend to every document that may be placed within what may be characterized as an investigatory file. There must be spe-

cific proof elicited that the documents sought are of a type for which an exemption has been provided.[3] On doubtful questions an in camera inspection may be appropriate.

In this case, while the plaintiffs sought all records in the police chief's custody relating to the Brenner party, the judge's findings, as well as the bulk of the testimony at trial, referred only to the police reports and letters from citizens concerning the incident. The police chief testified that his file on this incident contained various other documents and material. While the judge ruled without qualification that "the materials and data sought from [the police chief] qualify for exemption under G. L. c. 4, § 7, Twenty-sixth," the record as it presently stands supports that conclusion only with respect to the police reports and citizen letters. We think that the case should be remanded to the Superior Court for further proceedings to determine which, if any, of the other documents sought by the plaintiffs come within § 7, Twenty-sixth *(f)*, or any other statutory exemption provided in G. L. c. 4, § 7, Twenty-sixth *(a)*-*(i)*.

It follows that the judgment is affirmed in part in so far as it relates to police reports and letters from private citizens concerning the Brenner party and, with respect to other documents sought, the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[3] Compare the present case with *Town Crier, Inc.* v. *Chief of Police of Weston,* 361 Mass. 682 (1972), in which disclosure of certain police records was sought under the more limited versions of G. L. c. 4, § 7, Twenty-sixth, and G. L. c. 66, § 10, in effect prior to the amendments of St. 1973, c. 1050, §§ 1, 3.