Flannery, J.
In this action, plaintiff Globe Newspaper Company (the Globe) seeks access to, and copies of, materials compiled during the Boston Police Department’s (the Department) internal investigation of alleged police misconduct during the Carol DiMaiti Stuart homicide investigation, pursuant to G.L.c. 66, § 10 (the Public Records Law). Defendant Boston Police Commissioner William J. Bratton[4] and intervenor Ralph C. Martin oppose the Globe’s request, contending that the material falls within one or more of the statutory exceptions to disclosure. Following a bench trial pursuant to Mass.R.Civ.P. 65(b)(2), the court ordered the Department to produce the sought-after materials for in camera inspection. After examining these materials in camera, the court makes the following rulings and order.
*137 I. INTRODUCTION
On October 23, 1989, Carol DiMaiti Stuart and her husband Charles Stuart were shot in their car in the Mission Hill section of Boston. Carol Stuart died from the gunshot wounds and Charles Stuart was seriously injured. The Boston Police Department conducted a highly-publicized investigation of the shooting (the homicide investigation), in the course of which they interviewed numerous potential witnesses, and obtained warrants to search at least three residences. In addition, several witnesses testified before an investigative grand jury. The grand jury investigation of the Stuart homicide concluded in September 1991.
The Department of Justice Investigation
While the homicide investigation was still ongoing, the United States Department of Justice undertook an investigation into Boston police officers’ conduct during the homicide investigation; specifically, the investigation of suspect Willie Bennett. On July 10, 1991, the United States Attorney’s Office released the results of this investigation to the public in a press release (the U.S. Attorney’s Press Release or Press Release). Although the United States Attorney elected not to prosecute members of the Boston Police Department for criminal civil rights violations, the Press Release revealed specific instances of alleged police misconduct. In the course of doing so, the Press Release disclosed the identities of several witnesses, the information the witnesses provided to police, and their grand jury testimony. The Press Release presented this information by way of summary and direct quotation. See Appendix A — United States Attorney’s Press Release.
The Boston Police Department’s Internal Investigation
As a result of the United States Attorney’s Press Release, the Boston Police Department conducted an Internal Affairs Division (IAD) investigation into the specific allegations of police misconduct during the Stuart homicide investigation. In addition to reexamining the materials compiled during the homicide investigation (hotline tips, audio tapes and transcripts of witness interviews, grand jury testimony, etc.), IAD investigators interviewed several witnesses and police officers who participated in the homicide investigation.[5]
The Department presented the results of the IAD investigation at an August 1992 press conference. In addition to a statement by Boston Police Commissioner Francis M. Roache relating the Department’s conclusion, the Department released a report entitled “The Stuart Investigation: A Response to the U.S. Attorney’s Report” (the Response). The Response addressed each of the specific allegations contained in the United States Attorney’s Press Release. In doing so, it summarized witness interviews conducted during both the IAD investigation and the underlying homicide investigation. Moreover, the Response summarized Internal Affairs Department interviews of police officers and referred to several citizen witnesses’ grand jury testimony. As in the United States Attorney’s Press Release, the Response included direct quotations from witnesses. See Appendix B — The Stuart Investigation: A Response to the U.S. Attorney’s Report.
The Globe’s Public Records Request
By letter dated September 15, 1992, the Globe requested that Boston Police Commissioner Roache (Commissioner) produce the materials compiled during the Boston Police Department’s internal investigation into possible police misconduct in the Stuart homicide investigation, pursuant to the Massachusetts Public Records Law, G.L.c. 66, §10 (the Public Records Law). The Commissioner denied the Globe’s request, claiming that the requested materials fell within the exemptions to the Public Records Law set forth in G.L.c. 4, §7 cl.(26). Specifically, he alleged that the materials were protected under either the statutory exemption, G.L.c. 4, §7 cl.(26)(a); the privacy exemption, G.L.c. 4, §7 cl.(26)(c); or the investigatory exemption, G.L.c. 4, §7 cl.(26)(f).[6] As a result of the Commissioner’s refusal, in December 1992 the Globe filed a complaint seeking declaratory and injunctive relief. The court agreed to consolidate the hearing on the request for a preliminary injunction with a trial on the merits pursuant to Mass.R.Civ.P. 65(b)(2).
II. THE PUBLIC RECORDS LAW
Public records include all “documentary materials or data, regardless of physical form . . . made or received by any . . . authority of the Commonwealth,” unless the materials falls within one of seven statutory exceptions.[7] G.L.c. 4, §7 cl.(26). If a record is public, the record’s custodian must furnish one copy (at a reasonable fee) in response to documentary requests. G.L.c. 66, §10(a). If the custodian refuses to comply with a records request, the Superior Court has jurisdiction to order compliance. G.L.c. 66, §10(b).
In actions seeking disclosure, there is “a presumption that the record sought is public.” G.L.c. 66, §10(c). To overcome this presumption, the custodian has the burden of proving “with specificity” that a particular exemption applies. Id. Moreover, in light of the statutory presumption favoring disclosure “exemptions must be strictly construed.” Attorney General v. Ass’t Comm’r of the Real Property Dep’t., 380 Mass. 623, 625 (1980). Accordingly, the existence of some exempt materials in a document does not “justify cloture as to all of it.” Reinstein v. Police Comm’r., 378 Mass. 281, 290 (1979). “fT]he right to access extend[s] to any non-exempt ‘segregable portion’ of a public record.” Id. at 288.
The Boston Police Department premises its refusal to comply with the Globe’s document request upon three of the seven statutory exceptions to disclosure: (1) the statutory exemption, G.L.c. 4, §7 cl.(26)(a); (2) the privacy exemption, G.L.c. 4, §7 cl.(26)(c); and (3) the investigatory exemption, G.L.c. 4, §7 cl.(26)(f).
1. The Statutory Exemption
Public records do not include materials “specifically or by necessary implication exempted from disclosure *138 by statute.” G.L.c. 4, §7 cl.26(a). This exemption prevents the disclosure of Criminal Offender Record Information (CORI) as defined in G.L.c. 6, §167[8] to the public. Reinstein v. Police Comm’r., 378 Mass. 281, 293-94 (1979).
2. The Privacy Exemption
Under the privacy exemption, public records do not include “personnel and medical files [or] other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” G.L.c. 4, §7 cl.26(c). “Analysis under exemption (c) requires a balancing between the seriousness of any invasion of privacy and the public right to know.” Attorney General v. Collector of Lynn, 377 Mass. 151, 156 (1979) (citing Hastings & Sons Publishing Co. v. City Treasurer of Lynn, 374 Mass. 812, 818-19 (1978)).
In determining whether disclosure of particular information would constitute an invasion of personal privacy, courts have considered the following factors: whether disclosure would “result in personal embarrassment to an individual of normal sensibilities,” Attorney General v. Collector of Lynn, supra at 157; whether the materials sought contain “ ‘intimate details’ of a ‘highly personal nature,’ ” Hastings & Sons Publishing Co. v. City Treasurer of Lynn, supra at 817-18 (citations omitted); and, whether “the same information is available from other sources,” Attorney General v. Collector of Lynn, supra at 157 (citing Campbell v. United States Civil Serv. Comm'n., 539 F.2d 58, 61 (10th Cir. 1976)). After considering these factors, the court must determine whether the public interest, including its “interest in knowing whether public servants are carrying out their duties in ... [a] law-abiding manner,” outweighs the resulting privacy invasion. Attorney General v. Collector of Lynn, supra at 158 (holding that the public’s interest in knowing how public expenses are distributed and whether tax collectors efficiently cany out their duties outweighs the privacy invasion resulting from the disclosure of tax delinquents).
3. The Investigatory Exemption
Public records do not include “investigatoiy materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.” G.L.c. 4, §7 cl. 26(f). Among the rationales for this exemption are to avoid disclosing the Commonwealth’s case before trial, to prevent the disclosure of investigative techniques not otherwise known to the public, to encourage citizen witnesses to speak freely to police during investigations, and to foster an atmosphere in which police officers can candidly record their thoughts and observations. Bougas v. Chief of Police of Lexington, 371 Mass. 59, 62 (1976), as quoted in Reinstein v. Police Commissioner, 378 Mass. 281, 289 (1979).
Despite these considerations, “an agency such as a police department cannot simply take the position that, since it is involved in investigatory work and some of its records are exempt under the statute, every document in its possession somehow comes to share in that exemption. There is no blanket exemption provided for records kept by police departments nor does the investigatory materials exemption extend to every document that may be placed within what may be characterized as an investigatory file. There must be specific proof elicited that the documents sought are of a type for which an exemption has been provided. On doubtful questions an in camera inspection may be appropriate.” Bougas v. Chief of Police of Lexington, 371 Mass. 59, 65-66 (1976).
III. The Trial
At pre-trial conferences in February and March 1993, the Department expressed concern that proving the applicability of the statutory exceptions at trial would require it to reveal the materials whose disclosure it sought to protect. At that time, the court proposed that counsel for the Globe be permitted to examine the materials subject to a protective order in preparation for trial. The order would prohibit counsel from revealing the materials’ content to anyone, including her client. The Department opposed this proposal, contending that it could meet its burden of proof, see discussion supra, by limiting disclosure to broad categories of materials, i.e. witnesses’ statements, officer statements, grand jury testimony.[9]
The court conducted a four-day trial; March 4 and 5, and May 17 and 18, 1993. The Globe introduced six affidavits into evidence and called one witness to testify. Five witnesses testified for the Department. Department witnesses, many of whom had reviewed the sought-after materials, testified to their conclusions that a particular exemption to the Public Records Law applied to a particular category of document. For example, Superintendent Doherty testified that the grand jury testimony contains homicide information, and as such is exempt from disclosure under the investigatory exemption. 2Tr. 26. In keeping with the Department’s concern that the documents’ contents remain undisclosed during trial, however, the witnesses did not provide more specific details of why a particular document, or portion thereof, was not subject to disclosure. In addition, Department witnesses testified as to why, as a general matter, disclosure of “a particular category of document might not be in the public interest. For example, Detective Harrington testified that disclosure of police officers’ statements in any LAD investigation would have a chilling effect on law enforcement in the future. 3 Tr. 57. (Emphasis supplied.)
Despite the abundance of general testimony as to why whole categories of materials fell within exemptions to the Public Records Law, the court ruled in a post-trial memorandum that the generalizations could not substitute for in camera inspection of the materials by the court, and ordered the materials’ production. See Appen *139 dix D — Globe Newspaper Co. v. Bratton, Civil No. 92-75171 (Suffolk Super. Ct. Aug. 3, 1993). Accordingly, on August 4, 1993, the Department produced all the materials compiled during the IAD investigation of the Stuart homicide investigation to the court under seal.
IV. The In Camera Inspection
In light of the directive of Bougas v. Town of Lexington, supra at 66, from August 18 to August 25, 1993, the court examined the requested materials in camera. Following the categorical index the Department prepared, the court determined the applicability of each exemption to every document and audio tape line by line. In many cases, the court’s rationale for redacting (or releasing) specific documents (or portion of documents) is common to a particular “type” of document. As such, it has organized the materials into the following categories to facilitate its discussion: citizen witness statements, officer statements, witness notifications, certified mailings, affidavits and warrants, newspaper articles, grand jury testimony of civilian witness, contacts, the investigator’s report, investigator’s notes, and miscellaneous reports. See Appendix C — Index (In Redacted Form) of Materials. The contents of these categories are similar to, but do not mirror, the Department’s organizational scheme.
Before addressing these categories in detail, certain events stemming from the IAD investigation and the underlying homicide investigation make the court’s analysis in this case unique. Specifically, despite the Department’s claim that the investigatory materials are exempt from disclosure under the Public Records Law, the United States Attorney’s Press Release and the Department’s Response have already disclosed very detailed information to the public that might otherwise be protected. For example, both reports reveal the identity of many citizen witnesses, their addresses, and the substance of their grand jury testimony. In addition, in its summary of witness interviews, the Department’s Response identifies when and where IAD witnesses were incarcerated at the time of their IAD interview.
Mindful of these disclosures, the court made every attempt to prevent the disclosure of documents, or portions thereof, containing exempt information of which the public was not yet aware. In presenting its analysis, the court will address the reasons for its decisions, as specifically as possible, without revealing the substance of the statutorily exempted information.
Moreover, despite the Department’s claim that the requested materials contain homicide investigation materials, and as such fall under the investigatory exemption, the court in Bougas v. Chief of Police of Lexington, 371 Mass. 59 (1979), quite clearly states that “no blanket exemption” applies. Bougas v. Chief of Police of Lexington, supra at 65. Notwithstanding, even after conducting a line-by-line inspection of the materials, the court found no document, or portion thereof, that fell within the investigatory exemption. Accordingly, all of the redac-tions ordered by the court fall within the privacy exemption, except for a narrow class of documents containing CORI information, discussed below.
V. The Results of the In Camera Inspection
Following its in camera inspection of the materials, the court concludes that in many cases only portions of documents are exempt from disclosure. Since it would be impossible to describe what specific portions of text must be redacted without revealing their contents, the following discussion describes the court’s analysis as to categories of documents, and where necessary, a document’s general contents. The Department’s ability to accurately comply with this order, however, requires that the court convey, with specificity, what documents, and portions of documents, it orders disclosed.[10] Accordingly, the court will furnish a redacted copy of the materials to the Department pursuant to this decision. The following analysis parallels the document index in Appendix C and is intended to be read herewith.
A — Witnesses’ Statements
In response to the court’s order, the Department produced transcripts and audio tapes of twelve witness interviews. IAD investigators conducted nine of the interviews. The remainder were conducted during the homicide investigation in November 1989. The U.S. Attorney’s Press Release identifies each of these witnesses, except Rodney Jackson, as participants in the homicide investigation and summarizes the information they provided to homicide police and/or the FBI investigators. See Appendix A — United States Attorney’s Press Release. In addition, the Department’s Response summarizes every IAD interview in this category except the interview with Barry Smith. See Appendix B — The Stuart Investigation — A Response to the U.S. Attorney’s Press Release.
In light of the degree to which both reports disclose detailed information about these and other witnesses, the court balanced the citizen’s privacy interest with the public’s interest in the statements’ disclosure. See Attorney General v. Collector of Lynn, supra at 156. Since the homicide investigation concluded almost two years ago, the public interest in disclosure of any previously undisclosed homicide information is minimal, at best. Moreover, much of the undisclosed information is neither crucial, nor relevant, to the propriety of the officers’ conduct during the homicide investigation.
Balancing these factors with citizens’ interest in protecting the privacy of their participation in a police investigation, the court finds in favor of redacting previously undisclosed names of citizen witnesses under the privacy exemption. In addition, the court redacts otherwise undisclosed addresses: references to incarceration, release dates, and probation; testimony before the grand jury;[11] and, information of a personal nature. See Attorney General v. Ass't Comm’r of the Real Property Dep’t, 380 Mass. 623, 626 n.2 (1989) (types of information the privacy exemption is intended to protect under federal *140 law include “marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights [and] reputation”) (citation omitted).
With regard to materials already disclosed, however, the balance tips in favor of disclosure. Recognizing that, as a practical matter, it is impossible to erase from public knowledge information already released, the court concludes that witnesses no longer had an expectation of privacy as to the released information. For example, several witness interviews begin by stating that they take place at correctional facilities. Absent previous disclosure, that information would be redacted because revealing a person’s incarceration would invade the witness’s privacy. The Police Department’s Response, however, discloses where eveiy IAD interview took place. Accordingly, the court does not order the Department to redact this information.
Similarly, where a witness made statements purporting to reveal personal information about other people, i.e., “person ‘X’ is a drug addict,” the court orders disclosure. This rests on the court’s conclusion that people mentioned in the course of an interview have little expectation of privacy regarding statements made by others about them.
B — Officers’ Statements and Related Materials
Since the Department’s Response summarizes every IAD interview with police officers, the reasoning underlying the court’s analysis of citizen witness interviews also holds true for officers’ statements. Balancing the public interest with personal privacy interests, the court seeks to protect the identities, addresses, and personal information that had not been disclosed previously. For example, in one interview, an officer identifies a person whose home had been searched pursuant to a warrant. Absent the Department’s disclosure of the person’s name in its Response, the court would have redacted her identity from the officer’s statement.
In addition to officers’ statements, this category contains interrogation forms signed by each officer whose statement was produced. These forms do not contain personal information, nor would their disclosure “impede effective law enforcement.” G.L.c. 4, §7 c.26(f). Accordingly, the court orders their production without redactions.[12]
The three remaining documents each merit individual discussion. The first, a letter from Detective O’Malley to his attorney, does not contain any information falling within the privacy exemption. As for whether the attorney-client privilege might prevent this document’s disclosure, the Department had ample opportunity at trial to bring this to the court's attention. Having failed to do so, the court has no basis to find that the attorney-client privilege applies.
The second document is the first of many reports prepared by police officers during the IAD investigation and the underlying homicide investigation. In reviewing all of these reports, the court finds nothing that might fall within the investigatory exemption. None of the reports reveal the identities of confidential informants, nor do they reveal investigative techniques of which the public is not otherwise aware. See Bougas v. Chief of Police of Lexington, 371 Mass. 59, 62-63 (1979). Moreover, although such disclosure might discourage police officers from candidly recording their thoughts, see id., it cannot be said that the possible result “would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.” G.L.c. 4, §7 cl. 26(f). To the extent that these documents contain previously undisclosed personal information, the court orders the Department to produce redacted versions of the documents according to the guidelines set forth above. See Section A — Witnesses Statement, supra.
The final document is a report compiled during the investigation whose contents are exempt entirely from disclosure under the privacy exemption. During the homicide investigation, the Department compiled the arrest records of the homicide witnesses and their relatives. This document, if disclosed, would invade the privacy of each person named therein. Moreover, the contents of this report provides no insights to the public as to police officers’ conduct during the homicide investigation.
The Boston Police Department or the Fairfax Report have already disclosed all other documents in Category B. See Appendix C.
C — Additional Notices
The Department has already released six of the documents within this category to the Globe. The remaining reports contain information regarding officers’ attempts to contact witnesses, including some personal information. In accordance with the guidelines set forth in the previous two sections, the court orders that the Department produce these documents in redacted form. In addition, Lt. McCarthy’s report contains a police photo and criminal history. Since this is CORI information, see G.L.c. 6, §167, these portions of Lt. McCarthy’s report are exempt under both the statutory and privacy exemptions.
D — Miscellaneous Reports
The only documents within this category that have not been disclosed are reports containing no personal information. Accordingly, the courts orders their release in unredacted form.
E — Certified Mailing
This category contains copies of certified letters to witnesses requesting their participation in the LAD investigation and the corresponding certified mail receipts. But for the witnesses’ names and addresses, the letters and receipts are identical. Since the Department must redact this information under the privacy *141 exemption, the Department need only produce one redacted letter and receipt at this time.
F — Affidavits and Warrants
In the index accompanying the Department’s production of documents to the court, the Department indicated that it had released one document in this category already and would release all but one of the remaining documents upon determination of an impoundment order. Neither party presented information at trial enabling the court to accurately assess whether these records are still impounded. As such, the court takes no action with regard to these materials.
The only other document in this category is a report by Officer Antonucci. It does not contain any personal information and the court orders its production in unredacted form.
G — Newspaper Articles
The Department released all of the newspaper articles compiled during the IAD investigation.
H — Grand Jury Testimony
As indicated in the Boston Police Report, several witnesses interviewed by IAD referred to or recapitulated their own testimony, and that of other witnesses, before a Suffolk County Grand Jury and a Federal Grand Jury. In addition, the materials supplied by the Department contain references to, and summaries of, grand jury testimony. In some cases, excerpts from the actual transcripts of the proceedings have been presented.
There is no general prohibition precluding grand jury witnesses from disclosing the fact or substance of their testimony. Only grand jurors are precluded by their oath from disclosing the evidence presented. Silverio v. Municipal Court of the City of Boston, 355 Mass. 623, 626-27, cert. denied, 396 U.S. 878 (1969). See also Commonwealth v. Geagan, 339 Mass. 487, 497, cert. denied, 361 U.S. 895 (1959). Nevertheless, “the requirement that grand jury proceedings remain secret is deeply rooted in the common law of the Commonwealth.” WBZ-TV4 v. District Attorney for the Suffolk District, 408 Mass. 595, 599 (1990) (citation omitted). The rationale for the requirement of secrecy is based upon many of the same concerns implicated in the statutory exemptions to disclosure of certain public records. Shielding the grand jury from “extraneous influences” facilitates the investigative and accusatory goals of the proceedings by encouraging full and truthful disclosure by witnesses and unbiased deliberations by jurors. Id. at 600. Further, secrecy protects “individuals from unwarranted notoriety and disgrace, unless probable cause is found to indict them.” Id.
To these ends, in those cases in which the fact that a witness testified before a grand jury has not been previously disclosed, the court exempts the transcript of the witness's grand jury testimony from disclosure. Thus, both the witness’s expectation of privacy and the integrity of the grand jury (or “interests underlying the rule of secrecy”) are safeguarded. Moreover, in reviewing those portions of grand jury testimony already summarized or quoted in either the Boston Police Department Response or the U.S. Attorney Press Release, the court adheres to the same principles discussed above regarding redaction of personal information, addresses, and phone numbers, etc., and protecting the identities of previously undisclosed participants.
I — Contacts
The Department has already released or has agreed to release, with names and addresses redacted, all documents within this category.
J. — Certified Mail
The Department has released all certified mailings with names and addresses redacted.
K — Miscellaneous Reports Homicide Hotline Records
This sub category contains records of calls to the police homicide hotline from October 24 to November 8, 1989. Balancing the public interest with the caller’s personal privacy, the court concludes that disclosure of the callers’ names is warranted. Releasing the callers’ names facilities the public’s full and fair assessment of the IAD investigation. Disclosure allows the public to evaluate the degree to which officers followed up on hotline tips and the frequency with which callers telephoned the hotline. Moreover, the public interest in any information relating to these calls is heightened by the Department’s claim that Willie Bennett became a suspect, at least in part, because of hotline tips.
In light of the heightened public interest and the presumption in favor of disclosure, the public interest outweighs callers’ interest in their identities remaining undisclosed. First, unlike citizen witnesses, many of whom the police contacted, all hotline callers provided information on their own initiative. Furthermore, police did not require hotline callers to provide their names or other personal information; those that did, did so voluntarily. Accordingly, in response to the Department’s fears that disclosure of hotline caller identities would discourage future citizen participation, the court responds that future callers waxy of the disclosure of personal information have the option of supplying information anonymously.
The information provided by callers includes: names of suspects, observations of witnesses, and reports of crimes similar in time or place to the Stuart homicide. In addition, handwritten notes on the “tip sheets” and accompanying materials reflect ongoing information, sharing between different police departments, and steps taken by police following particular calls. The court orders the redaction of the portions of these materials containing CORI information. In addition, under the privacy exemption, the court orders that the Department redact any other information referencing a suspect’s previous arrests, social security number or release date from prison.
*142 With regard to the identities of suspects identified by callers, the court also finds In favor of disclosure. Although the court recognizes the potential embarrassment associated with being mentioned in conjunction with a homicide investigation, potential suspects do not have an expectation of privacy as to the statements of others. See Witnesses Statements, supra (identifying the court’s rationale for disclosing personal information provided by others). Notwithstanding the potential suspects’ reduced expectation of privacy, the court might hesitate to make these disclosures, but for the copious previous disclosures and compelling public interest.
Other Reports
In addition to the hotline tips, this category contains police reports and other materials compiled during the IAD investigation. The court orders the Department’s production of these materials, with CORI material and personal information redacted, pursuant to the above guidelines and specifically identified in the court's redacted version presented to the Department.
L — Investigator’s Notes and M — IAD Investigator’s Reports
The court examined these documents and orders that the Department redact CORI information and personal information pursuant to the guidelines set forth above in Section B, supra.
N — Tapes Not Transcribed
This category contains audio tapes for which no transcript is available. The court orders these tapes disclosed without any redactions.
O — Investigator’s Materials — Draft
The Department submitted the underlying materials compiled in preparing an earlier draft of the Investigator’s Report. All of these documents have been previously analyzed in Categories A thru K above. Thus, Appendix C identifies these materials and cross-references them to the discussion above.
VI. Conclusions
After conducting a meticulous review of the materials, it is clear that it is not practical to impose such a time-consuming and resource-intensive responsibility upon the court. To facilitate an efficient resolution of future Public Records Law requests, it might be more appropriate to permit counsel for the custodian and the party seeking production access to the materials subject to a protective order. Doing so would allow the parties to particularize their arguments to the court, citing specific documents, or portions of documents, that are exempt, or subject to, disclosure. The protective order would prohibit counsel from disclosing the documents’ contents to anyone, even to their clients. This procedure would remove the court from the position in which it was placed in this action— namely, trying to identify the arguments both sides would make as to every document, and instead allow the court to devote its time to evaluating these arguments and ultimately resolving the dispute. Cf. Commonwealth. v. Stockhammer, 409 Mass. 867 (1991).
ORDER
For the foregoing reasons, it is hereby ORDERED, ADJUDGED, and DECREED that the defendants shall, on or before September 17,1993, disclose to the plaintiff, and make available for copying for a reasonable fee, all investigative and other materials declared herein to be subject to the Public Records Law (G.L.c. 66, §10) and determined not to be exempt thereunder from disclosure. With respect to documents and other materials ordered to be disclosed only in part, the defendants shall implement the redactions authorized herein.
So ordered.

 On June 24,1993 William J. Bratton replaced the original defendant Francis M. Roache as Boston Police Commissioner.

 This list does not describe all of the materials the Internal Affairs Division reviewed during their investigation. For a detailed list of the materials the Boston Police Department produced in response to the court’s order, see Appendix C.

 For a detailed description of the Massachusetts Public Records Law and the claimed exemptions, see discussion infra.

 G.L.c. 4, §7 cl.(26) provides:
Public records. Twenty-sixth, “Public records” shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions . . .

 G.L.c. 6, §167 provides in pertinent part:
“Criminal offender record information,” records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release. Such information shall be restricted to that record as the result of the initiation of criminal proceedings or any consequent proceedings related thereto. Criminal offender record information shall not include evaluative information, statistical and analytical reports and files in which individuals are not directly or indirectly identifiable, or intelligence information. Criminal offender record information shall be limited to information concerning persons who have attained the age of seventeen and shall not include any information concerning criminal offenses or acts of delinquency committed by any person before he attained the age of seventeen: provided, however, that if a person under the age of seventeen is adjudicated as an adult, information relating to such criminal offenses shall be criminal offender record information. Criminal offender record information shall not include information concerning any offenses which are not punishable by incarceration . . .

 Since the Globe made its initial request for materials, the way in which the parties have categorized the documents has changed several times. One reason is that over the past several months the Department has released to the Globe many of the materials the Globe sought in its complaint. The categories of materials that remain are addressed in detail in Section V, infra.

 This order includes both the written transcripts and audiotapes of interviews and witness statements. As a practical matter, however, the court was unable to redact the audio tapes.

 For a detailed discussion of the court’s analysis regarding grand juiy testimony, see discussion, infra.

 Of the six interrogation forms produced to the court, the Department has already released five to the Globe.