Burnes, J.
INTRODUCTION
The plaintiff Globe Newspaper Company (the “Globe”) has moved for a preliminary injunction in connection with its request for public records directed to the defendant Paul F. Evans, as he is Commissioner of the Boston Police Department (“Police Department”). The Police Department opposes this motion, asserting that the records are exempt from public disclosure because they are investigatory materials, the disclosure of which would prejudice effective law enforcement and, thus, disclosure is not in the public interest. G.L.c. 4, §7, cl. 26(f). The court makes the following findings of fact, conclusions of law and order.
FINDINGS OF FACT
On July 8, 1997, the Globe made a public records request directed to the Police Department seeking certain records concerning eight drug cases handled by the Police Department in 1991. For each of the eight cases, the Globe requested the applicable Seized Money Form, Incident Report and bank deposit slip for the monies seized.
Prior to making its public records request, the Globe reviewed court records for each of the eight cases, including search warrant returns that reported the amount of money seized pursuant to search warrants executed in each of the cases. Therefore, the Globe already has the name of the defendants in each case, the name of the officer who made the return on the search warrant and the “cc#” number[1] for each case. The Globe also knows the amount of money which was reported in the search warrant return as having been seized in each of the cases.
The records sought by the Globe are maintained in the Police Department’s “canofile”[2] system at the Police Department’s central Drug Control Division (“DCD”). Departmental regulations require Seized Money Forms to be prepared by police officers who seize money, including during the execution of search warrants in drug cases. The Seized Money Form requires a description of the amount of money seized, the nature of the seizure, the possession sequence, the location and disposition of the money, and the identity of the defendant and the arresting officer. The Incident Reports require the officer to state the circumstances of the seizure, the officers involved, the amount of money seized and the subjects of the search. The bank deposit slips for money seized record the amount of money actually deposited with the bank in connection with each incident. These documents, as well as others, are scanned into the Police Department’s canofile system and are organized alphabetically by defendant name. The originals of the documents are destroyed by the Police Department in the ordinary course.
The Globe’s request was forwarded to the DCD for processing. Because of concerns raised during the course of compiling the records sought by the Globe, the Office of Legal Advisor requested that the Bureau of Internal Investigations (“BII”) commence an investigation and it has done so.
On July 18, 1997 the Police Department responded to the Globe’s request in writing stating that records were being compiled and would be forwarded to the Office of the Legal Advisor for review and determination concerning disclosure. The Police Department stated that it was not “waiving any privilege it might have regarding the disclosure of its records.” The Police Department did not identify any applicable exception to the Public Records Law.
On July 28, 1997, Superintendent Ann Marie Doherty, Chief of the BII, informed the requesting Globe reporter, Richard Lehr, that she had determined that the records sought in the Globe’s July 8, 1997 records request were the subject of a current investigation in the Police Department and that, therefore, the Police Department would not turn these records over at this time. The Police Department invoked the investigatory exemption of the Public Records Law. The Globe now seeks an order requiring the Police Department to produce the records.
CONCLUSIONS OF LAW
In determining whether a preliminary injunction should issue, the court must first determine whether the moving party is likely to succeed on the merits of its claim. It must then determine whether the moving party will be irreparably injured by the failure to issue the injunction. If the court determines that the moving party is likely to succeed on the merits of its claim and that it would be irreparably injured if the injunction were not issued, the court must then consider whether there will be harm to the opposing party, if the injunc *240 tion should issue. If there is such a harm, the court must balance those harms and issue the injunction only where the balance between the harms “cuts in favor of the moving party ...” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). Further, where there is a public interest involved, the court must also consider the risk of harm to that interest in determining whether to grant the requested relief. Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
G.L.c. 66, §10 provides the public with the right to inspect and obtain copies of public records. A public record is defined as “all books, papers, ... or other documentary material or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive officer, department of the Commonwealth or any political subdivision thereof’ unless the material is exempted. G.L.c. 4, §7, cl. 26. “[T]he dominant purpose of the [public record] law is to afford the public broad access to governmental records.” Globe Newspaper Co. v. Boston Retirement Board, 388 Mass. 427, 436 (1983). Thus, the statute carries with it a presumption in favor of disclosure. Pottle v. School Committee of Braintree, 395 Mass. 861, 865 (1985). In order to justify a refusal to produce public records, the custodian carries the burden of proving “with specificity” that the documents come within one of the statutory exemptions found in G.L.c. 4, §7 cl. 26. The statutory exemptions are to be strictly construed. Attorney General v. Assistant Commission of the Real Property Department of Boston, 380 Mass. 623, 625 (1980). The existence of some exempt information does not justify the refusal to disclose all of the information in a document. The right to access extends to nonexempt segregable portions of the public records. G.L.c. 66, §10(a). See Globe Newspaper Co. v. Boston Police Department, 419 Mass. 852, 867-68 (1995).
The Police Department has asserted that the records requested fall within the investigatory exemption set out in G.L.c. 4, §7, cl. 26, which provides:
Investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of such materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.
“ ‘There is no blanket exception provided for records kept by police departments’ solely because they are involved in investigatory work ...” Globe Newspaper Co. v. Boston Police Department, 419 Mass. at 859, quoting Bougas v. Chief of Police of Lexington, 371 Mass. 59, 62 (1976). Whether there is a valid assertion of the exemption is to be considered on a case by case basis. Globe Newspaper Co v. Boston Police Department, 419 Mass. at 859.
Both parties appear to agree that these documents are public records and the court so finds. The records are kept as a part of the ongoing business of the Police Department. The routine by which the information is recorded in them makes the recording of that information almost ministerial. It certainly is, or is supposed to be, “essentially a matter of routine.” Reinstein v. Police Commissioner of Boston, 378 Mass. 281, 291 (1979) (“Reinstein”), quoting Rural Hous. Alliance v. Untied States Dept. of Agriculture, 498 F.2d 73, 81, n.47 (D.C. Cir. 1974), quoting from Center for Nat’l Policy Review v. Weinberger, 502 F.2d 370, 373 (D.C. Cir. 1974). The records are clearly kept to enable the Boston Police Department to oversee the handling of monies seized in connection with drug arrests. This is a distinctly different kind of document from one which is generated in connection with an investigation of a specific incident. See Reinstein at 291. Compare Bougas v. Chief of Police of Lexington, 371 Mass. at 62 (plaintiff sought access to reports of the Lexington police and letters to the police from private citizens regarding an incident that resulted in misdemeanor charges against several of the plaintiffs).
These were not “investigatory materials” at the time of the Globe’s request. The affidavit of Superintendent Doherty demonstrates that the investigation of the BII was commenced because of the Globe’s request. Prior to Globe’s request, these documents were not “investigatory materials,” except as they may have been available to be used for governmental oversight of the performance of the duties of its employees. Reinstein at 291. In Bougas, the plaintiffs sought police reports which were generated in connection with a specific incident, in the investigation of that incident and before the request for information. To the contrary, here, the information sought by the Globe was recorded by the Police Department as a matter of “routine,” Reinstein at 291, and was not generated as a result of, or in connection with, an investigation.
The Globe has met its burden of showing irreparable harm. If these are public records and the Globe is entitled to them, even a day’s delay in access to the documents is, as a matter of law, deemed to be irreparable harm. Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 507 (1st. Cir. 1989). See also Globe Newspaper Co. v. Fenton, 819 F.Supp. 89, 94 (D.Mass. 1991).
The real question is whether these documents are “investigatory materials” entitled protection from disclosure. The rationale underpinning the investigatory exemption includes “the avoidance of premature disclosure of the Commonwealth’s case prior to trial, the prevention of the disclosure of confidential investigative techniques, procedures or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording *241 their observations, hypothesis and interim conclusions.” Bougas, 371 Mass. at 62. With the possible exception of the first consideration, none of the Bougas factors are implicated in the Globe’s request. The Globe already has much of the information contained in the documents it requests. It knows the defendants’ names, date of the seizure, the description of the amount of money seized and the arresting officer. There was no investigation in existence at the time of the request so the documents cannot reveal investigation techniques or information nor have any effect on police candor in investigations. Since it was the Globe which requested the documents and the information did not come from citizens, production will have no impact on citizens reporting activity.
What the Globe does not know, and seeks, is the amount of money actually deposited in connection with these seizures, and, perhaps, other officers who were involved in the arrest, seizure and deposits of money. At the hearing on this motion, the Police Department said that disclosure of the information sought might reveal other officers’ names or, because of the differences in amounts of money, by inference reveal who is under investigation. This, argues the Police Department, could jeopardize the investigation because witnesses might be contacted by the Globe or evidence might be destroyed. The Police Department did not specify how contact by the Globe would prevent witnesses from also talking to the Police Department nor what evidence might be destroyed. (After all, the recording of the different amounts of money, if any, has already been done and that evidence is in control of the Police Department.) The court, thus, finds that the Police Department has not met its burden of showing with specificity what it is about this information which would “probably so prejudice the possibility of effective law enforcement that disclosure would not be in the public interest.” G.L.c. 4, §7, cl. 26(f).
If the Police Department were entitled to protect this material as “investigatory materials,” then any such internal auditing documents would be entitled to protection, whenever the Police Department decided to investigate. The Police Department would have complete control as to the status of public records, simply by commencing an investigation. The exemption would swallow up the rule. The purpose of the Public Records Law is to enable citizens to evaluate the performance of their government. Op. Att’y. Gen., May 18, 1977. The public interest would not be served by preventing disclosure of this information.
ORDER
For the reasons stated above, the court grants the motion for a preliminary injunction as requested by the Globe as follows:
The Boston Police Department is to produce forthwith to the Globe Newspaper Co. the Seized Money Forms, Incident Reports and bank deposit slips for monies seized in the following 1991 drug cases:
1. CC Number 11-115208/Defendants Michael Lyford, Jason St. Cyre, Steve Thompson, Keith Cole and Daniel Woodley:
2. CC Number 11-130162/Defendants Miguel Andrades, Jose Antonio Paredes, Rosa Quinonez, Carlos Santana, Esquinul Pena and Rubin Ramirez;
3. CC Number 11-208224/Defendants Santiago Rivera, Servio Ortolaza, Juana Rivera and Carlos Quinonez:
4. CC Number 11-291387/Defendant Miriam Sanchez;
5. CC Number 11-400693/Defendants Martha Ortiz, German Quinones Cruz, Raphael Pabon and Emiliano Dejesus;
6. CC Number 11-512572/Defendants Catherine Black, Anthony Townsend, Raymond Brown and Anthony Martin;
7. CC Number 11-526245/Defendants Vincent Lugay and Salvin Douglas; and
8. CC Number 11-805851/Defendant Larry Milton.

 The “cc” number is the incident report number.

 The “canofile” system is a format for storing copies of records. The “canofile” stores a scanned image of a record onto a disk cartridge. All records relating to money seized in connection with drug arrests are stored by the Police Department on “canofile” cartridges.