van Gestel, J.
This matter comes before the Court on a motion by the plaintiffs, Bechtel Infrastructure Corporation (“Bechtel”) and Parsons, Brinckerhoff, Quade & Douglas, Inc. (“Parsons Brinckerhoff’), seeking preliminary injunctive relief against the Massachusetts Turnpike Authority (“MTA”) and the Massachusetts Highway Department (“MHD”).
BACKGROUND
At issue is the impending tender by the MTA and MHD of copiesin unredacted formof certain audits of Bechtel and Parsons Brinckerhoff performed by the Defense Contract Audit Agency (the “DCAA Audits”). Hulking in the background is the Central Arteiy/Tun-nel Project (“CA/T Project”), colloquially referred to as the “Big Dig.” Bechtel and Parsons Brinckerhoff are the two members of a joint venture called Bechtel/Parsons Brinckerhoff (“B/PB”) which, essentially from the beginning, almost two decades ago, has served as the Project Manager for the CA/T Project.
The DCAA, although a Federal auditing agency, in this instance was engaged by, and paid by, the Commonwealth for the audits in question. DCAA, therefore, in this instance was not acting with its official Federal auditing hat on.
The tender of the DCAA Audits, if permitted, will be to the Massachusetts Senate Post Audit and Oversight Committee (the “Committee”).
On April 2, 2003, the Committee requested Bechtel and Parsons Brinckerhoff to produce copies of certain DCAA Audit reports for various years between 1990 and 2001, currently held by MTA and MHD. Bechtel and Parsons Brinckerhoff say in their complaint that they are willing to produce redacted versions of the DCAA Audits to the Committee or un-redacted versions if the Committee agrees to keep them confidential. Indeed, at oral argument, counsel for Bechtel and Parsons Brinckerhoff suggested the willingness of his clients to permit the Committee, or its agent, to come to the B/PB offices and review un-redacted copies of the audits. They argue for the right to take these positions with regard to the DCAA Audits because the audits are said to contain protectable trade secrets, proprietary and confidential information that should not be revealed. Paragraph 22 of the complaint[1] describes the information sought to be protected from public production as follows:
The DCAA Audits contain information as to Bechtel and Parsons Brinckerhoff pertaining to, among other things, overhead rates, pricing and pricing components, compensation of corporate officers, benefit plans, real estate information, and research and development of Bechtel and Parsons Brinckerhoff respectively.
It is alleged in the complaint that: “On April 4, 2003,[2] Bechtel and Parsons Brinckerhoff learned in a telephone conversation with the Chief Counsel for the CA/T Project that the Committee has now requested MTAand MTA has agreedto deliver un-redacted copies of the Audit Reports to the Committee.”
The MTA and MHD essentially contend that the DCAA Audits, having been provided to them in un-re-dacted form, are now public records that may be delivered to the Committee.
DISCUSSION
It is in this posture that the Court must assess the elements set out in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980): is there a substantial likelihood of success on the merits; is there a substantial risk of irreparable harm; and what is the effect of balancing the equities between the parties. See also GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993).
Further, this is one of those cases in which the public interest also must be considered. See Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001); Commonwealth v. MassCRINC, 392 Mass. 79, 88-89 (1984); Brookline v. Goldstein, 388 Mass. 443, 447 (1983).
In this process, the burden of persuasion rests on Bechtel and Parsons Brinckerhoff as the parties seeking the injunctive relief. See, e.g., Robinson v. Secretary of Administration, 12 Mass.App.Ct. 441, 451 (1981).
The public interest is immense. A Committee of the Legislative Branch is seeking the documents in its oversight capacity. Even Bechtel and Parsons Brinckerhoff concede the Committee’s authority to review the documents. The CA/T Project, on which *150 Bechtel and Parsons Brinckerhoff serve jointly as the Project Manager, is one of the largest public works projects ever undertaken. And the Project, jointly managed by Bechtel and Parsons Brinckerhoff, is publicly knownand judicially noticedto be billions of dollars over budget. These facts must be prominent in the mind of the Court in assessing whether Bechtel and Parsons Brinckerhoff can show a substantial likelihood of success on the merits in their effort to keep from the Committee un-redacted copies of documents that they already have turned over to two other governmental entities, the Turnpike Authority and the Highway Department, or in the alternative to prevent the Committee from taking certain actions regarding the documents, such as making them public, once in the Committee’s hands.
“Where a court contemplates an injunctive order to compel an executive agency to take specific steps, it must tread cautiously in order to safeguard the separation of powers mandated by art. 30 of the Declaration of Rights of the Massachusetts Constitution.” Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 651 (2000). A Court cannot constitutionally direct the administration of a state department where such administration involves the exercise of discretion, see Stretch v. Timilty, 309 Mass. 267, 270-71 (1941), or require such a department to do something that the law does not mandate without usurping an executive function. See Charrier v. Charrier, 416 Mass. 105, 110 (1993).
A Court is generally reluctant and rightly cautious when asked to employ its vast equitable powers against another branch of government. Executive agencies, such as the MTA and MHD here, must be presumed to have the powers and authority, conferred upon them when created, to act and administer programs, like the CA/T Project, generally free from interference by the courts. And, if the Commonwealth itself, through its Legislative Branch, is the real party-in interest then the issuance of an injunction affecting it may be wholly beyond the powers of the Court. See, e.g., Executive Air Service, Inc. v. Division of Fisheries and Game, 342 Mass. 356, 357-58 (1961); St. Luke’s Hospital v. Labor Relations Commission, 320 Mass. 467, 469-70 (1946).
In Massachusetts, neither the courts nor the Legislature has adopted a “deliberative process” privilege to bar public access to government records. District Attorney for the Norfolk District v. Flatley, 419 Mass. 507, 509-10 (1995).
However, the Legislature has adopted G.L.c. 66, sec. 10 (1992 ed.), the public records statute, which requires public access to various records and documents in the possession of public officials unless otherwise exempt. See Hastings & Sons Publishing Co. v. City Treasurer of Lynn, 374 Mass. 812, 815-16 (1978) (discussing history of public records statute). “The class of records to which the public must be afforded access is defined in G.L.c. 4, sec. 7, Twenty-sixth [1992 ed.].” Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 430 (1983) (discussing interrelationship between statutes). Generally, the public records statute favors disclosure by creating a “presumption that the record sought is public.” G.L.c. 66, sec. 10(c). However, G.L.c. 4, sec. 7, Twenty-sixth, details specific exemptions to the public records statute, but in order for a record to qualify as exempt, the custodian of the record has the burden “to prove with specificity” that an exemption applies. G.L.c. 66, sec. 10(c). See Attorney Gen. v. School Comm. of Northampton, 375 Mass. 127, 131, 375 N.E.2d 1188 (1978); Bougas v. Chief of Police of Lexington, 371 Mass. 59, 61-62, 354 N.E.2d 872 (1976).
Id. at 510-11.
Public records are statutorily defined in detailed language that encompasses all papers made or received by any employee of any department of the Commonwealth unless such materials fall within one of the statutory exceptions. G.L.c. 4, Sec. 7. The definition is intentionally broad. See, e.g., Hull Municipal Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 414 Mass. 609, 614 (1993). By G.L.c. 66, Sec. 10(c) “there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies.”
The Court has examined the statutory exemptions and finds only one that may apply.[3] It covers trade secrets, commercial or financial information and reads in its entirety as follows:
trade secrets or commercial or financial information voluntarily provided to an agency for use in developing governmental policy and upon a promise of confidentiality; but this subclause shall not apply to information submitted as required by law or as a condition of receiving a governmental contract or other benefit. . .
G.L.c. 4, Sec. 7, Twenty-sixth (g).
Trade secrets are defined in a criminal statute, G.L.c. 266, Sec. 30(4), as meaning and including “anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement.”
In the civil common law in Massachusetts, a trade secret may be “a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.” J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736 (1970).
The Supreme Judicial Court has identified the following six factors for consideration in determining whether something is trade secret: the extent to which *151 the information is known outside of the plaintiffs business; the extent to which it is known by employees and others involved in the plaintiffs business; the extent of the measures taken by the plaintiff to guard the secrecy of the information; the value of the information to the plaintiff and to its competitors; the amount of effort or money expended by the plaintiff in developing the information; and the ease or difficulty with which others could properly acquire or duplicate the information. Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 840 (1972). The hallmark of a trade secret is secrecy. Id. at 841-42.
The Restatement of Unfair Competition, Sec. 39, defines a trade secret as “any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others.”
The Court is unsure of the intention of Bechtel and Parsons Brinckerhoff in footnote 8 of their memorandum in support of the motion for a preliminary injunction. There they seem to eschew exemption (g)’s application in this matter. If it’s trade secrets, commercial or financial information then exemption (g) is the place to look.
The DCAA Audits, now in the possession of the MTA and the MHD, are not secret, at least in the sense that they are now in the hands of third partiesthe MTA and the MHDand no longer just in the possession of the entities that claim secrecy protection. Indeed, they may already have reached public records status. Bechtel and Parsons Brinckerhoff have not proven “with specificiiy” to this Court that the trade secrets, or any other, statutory exemption to the production of the records in issue applies.
More to the point, the final clause of exemption (g) would seem to wholly remove these audit records from the narrow protection afforded to trade secrets, commercial or financial information. In the case of the particular audits in question, they certainly are “information submitted as ... a condition of receiving a governmental contract or other benefit.”
Additionally, the tender of such audits to the Committee is not revealing them to the public. Thus, such a tender is not a violation of the law under any construction presented here. At the same time, significantly, what the Committee does with the documents once received is not something that is subject to control by this Court. The Committee is part of the Legislature. As such, documents in its possession do not to fall within the ambit of “public records” regulated by G.L.c. 4, Sec. 7, Twenty-sixth or G.L.c. 66, Sec. 10. See, e.g., Westinghouse Bdcst. Co, Inc. v. Sergeant-at Arms of the General Court, 375 Mass. 179, 184-85 (1978). Nor should the Judicial Branch interfere in the Legislative Branch’s handling of those documents once received. To do so would be to “exercise the legislative . . . powers” in violation of art. 30 of the Massachusetts Declaration of Rights.
There is, therefore, no sufficient showing of a likelihood of success for the plaintiffs on the merits of this case.
ORDER
The plaintiffs’ motion for preliminary injunctive relief is DENIED.

 The Court observes that the complaint is not verified.

 The Court assumes that the date was April 3, 2003, or earlier, because the complaint itself is dated then and was filed in the Civil Clerk’s Office at 4:40 p.m. on April 3, 2003. Nothing turns on this issue for the present purposes in any event.

 Nile Court is unconvinced that exemption (a) that speaks to documents “specifically or by necessary implication exempted from disclosure by statute” is meant to address trade secrets, commercial or financial information, the latter being specifically exempted, with limitations, in exemption (g).