DISTRICT ATTORNEY FOR THE NORFOLK DISTRICT *vs.*
THOMAS J. FLATLEY & another.[1]

Suffolk. December 8, 1994. - February 15, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Supreme Judicial Court*, Superintendence of inferior courts. *Privileged
Communication. Evidence*, Privileged communication. *District Attor-
ney. Public Policy. Public Records.*

In a civil action against a landlord arising out of a criminal assault against
a tenant of an apartment owned by the landlord, in which the landlord
sought discovery of the contents of the district attorney's files relative to
his investigation and prosecution of the underlying criminal case, where
it could not be determined on the record whether the judge hearing the
landlord's motion to compel discovery had found the relevant materials
to be public records under G. L. c. 66, § 10, or whether the district
attorney had met his burden of proof that the documents were exempt
from public disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*), the mat-
ter was remanded for further consideration of those issues. [509-513]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on May 26, 1994.

The case was heard by *O'Connor*, J.

*William J. Duensing*, Assistant Attorney General, for the
plaintiff.

*John A. Kiernan* (*John P. Noyes* with him) for Thomas J.
Flatley.

LYNCH, J. The district attorney for the Norfolk district
(district attorney), appeals from a decision of a single justice
of this court, dismissing a petition under G. L. c. 211, § 3
(1992 ed.), seeking to vacate a decision of a Superior Court
judge ordering him to produce documents contained within a
prosecutorial file. We remand this case to the single justice

---

[1]Superior Court Department of the Trial Court.

where a judgment is to enter vacating the order of the Superior Court judge and remanding the case to the Superior Court for further proceedings consistent with this decision.

This matter arises from a civil action pending in the Superior Court Department, in which it is alleged that the plaintiff was the victim of an aggravated rape and an assault and battery which occurred in her apartment. The individual who perpetrated those crimes was prosecuted, convicted, and sentenced to prison. The Appeals Court affirmed the judgments. *Commonwealth* v. *Stande*, 26 Mass. App. Ct. 1115 (1988).

The apartment where the rape occurred is owned and managed by the defendant, Thomas J. Flatley. In the course of discovery in this case, Flatley subpoenaed the assistant district attorney who had prosecuted the criminal case (prosecutor), to produce the contents of his files which related to the investigation, prosecution, or trial of the criminal case.[2] Flatley argued that the contents of the file were relevant to the issues in the civil case and that inconsistencies exist between the victim's statements to the Randolph police department and her later testimony at the criminal trial. At the hearing on Flatley's motion to compel production, the prosecutor described generally the categories of documents contained within the file. After hearing arguments by counsel, the motion judge allowed Flatley's motion to compel "but only to the extent of statements of witnesses, sworn or unsworn, in the possession of the district attorney." The prosecutor then notified the judge and the parties to the civil litigation that he had located additional materials in his criminal prosecution file constituting fifteen pages of handwritten notes created by him following his initial interview with the victim. When the district attorney argued that these notes did not fall within the purview of the judge's order for production, the judge convened a supplemental telephonic

---

[2]In this case, the defendant Flatley served the prosecutor with a subpoena duces tecum and notice of deposition seeking "[t]he entire contents of the District Attorney's office file or files which relate to the investigation, prosecution and trial of [the criminal defendant] for the aggravated rape [and] assault and battery of [the victim]."

hearing regarding the newly discovered documentation contained within the prosecutorial file. After hearing arguments by counsel, including a specific description of the prosecutor's notes, the judge ruled that the notes were within the scope of his order, and therefore, must be produced. The district attorney then filed a motion for reconsideration, which another judge denied. The district attorney then sought review of the judge's decision before the single justice pursuant to G. L. c. 211, § 3. After determining that it was proper to use the extraordinary powers under G. L. c. 211, § 3, to review the judge's decision, the single justice dismissed the district attorney's complaint.[3] He then filed a timely notice of appeal.

We review a decision of a single justice to determine whether there has been a clear error of law or an abuse of discretion. See *Department of Mental Retardation* v. *Kendrew*, 418 Mass. 50, 53 (1994); *Delisle* v. *Commonwealth*, 416 Mass. 359, 360 (1993).

1. *Deliberative process privilege.* The district attorney contends that the documents sought (i.e., fifteen pages of handwritten notes assembled after prosecutor's initial interview with rape victim) are "prosecutorial deliberative material," and therefore, should be protected from public access. *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 490-491 (1921). See *Gomez* v. *Nashua*, 126 F.R.D. 432, 435 (D.N.H. 1989); *United States* v. *Berrigan*, 482 F.2d 171, 180-181 (3d Cir. 1973).

The Federal courts have long recognized the "deliberative process privilege" which prevents the disclosure of intra-agency memoranda and documents that record the deliberative, predecisional process leading to an agency decision. See

---

[3]The single justice decided that "it is proper for this Court to use its extraordinary powers under G. L. c. 211, § 3, to review the Superior Court's action at this stage rather than to limit the [district attorney] to an appeal to the full court after an adjudication of contempt." Given the district attorney's position as both an elected official and the chief law enforcement officer of the Commonwealth in the Norfolk district, we agree with the single justice's decision that it was proper for the district attorney to seek relief pursuant to G. L. c. 211, § 3 (1992 ed.).

*NLRB* v. *Sears, Roebuck & Co.*, 421 U.S. 132, 150-151 (1975); *N.O.* v. *Callahan*, 110 F.R.D. 637, 641 (D. Mass. 1986) (documents containing discussions regarding fiscal policy privileged). However, in Massachusetts, neither the courts nor the Legislature has adopted a "deliberative process" privilege as the district attorney now suggests. See *Babets* v. *Secretary of Human Servs.*, 403 Mass. 230, 239 (1988) (declining to create "deliberative process" or "executive" privilege as asserted by the defendants); *N.O.* v. *Callahan, supra* at 642 (acknowledging absence of any Massachusetts opinion recognizing deliberative process privilege).

However, this court has stated that "[i]t is a principle of law founded upon sound public policy and arising out of the creation and establishment of constitutional government that communications made to a district attorney in order to secure the enforcement of law are privileged and confidential in the sense that they cannot be revealed at the instance of private parties in aid of actions at law." *Attorney Gen.* v. *Tufts, supra.* Over one century ago this court explained the rationale for this rule: "It is the duty of every citizen to communicate to his government any information which he has of the commission of an offence against its laws. To encourage him in performing this duty without fear of consequences, the law holds such information to be among the secrets of state, and leaves the question how far and under what circumstances the names of the informers and the channel of communication shall be suffered to be known, to the absolute discretion of the government. . . ." *Worthington* v. *Scribner*, 109 Mass. 487, 488 (1872). These two cases not only establish a broad privilege encompassing all communications made to a prosecutor for the purpose of securing law enforcement, but also make the privilege absolute. No subsequent Massachusetts decision modifies or abrogates either *Tufts* or *Worthington.* However, the Legislature has adopted G. L. c. 66, § 10 (1992 ed.), the public records statute, which requires public access to various records and documents in the

possession of public officials unless otherwise exempt.[4] See *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn*, 374 Mass. 812, 815-816 (1978) (discussing history of public records statute). "The class of records to which the public must be afforded access is defined in G. L. c. 4, § 7, Twenty-sixth [1992 ed.]."[5] *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 430 (1983) (discussing interrelationship between statutes). Generally, the public records statute favors disclosure by creating a "presumption that the record sought is public." G. L. c. 66, § 10 (*c*).[6] However, G. L. c. 4, § 7, Twenty-sixth, details specific exemptions to the public records statute, but in order for a record to qualify as exempt, the custodian of the record has the burden "to prove with specificity" that an exemption applies. G. L. c. 66, § 10 (*c*). See *Attorney Gen.* v. *School Comm. of Northampton*, 375 Mass. 127, 131 (1978); *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 61-62 (1976).

2. *G. L. c. 4, § 7, Twenty-sixth (f) exemption.* The district attorney contends that the information sought constitutes "law enforcement investigative materials," and therefore, is protected from public access under the specific statutory exemption of G. L. c. 4, § 7, Twenty-sixth (*f*) (1992 ed.).[7] The

---

[4]General Laws c. 66, § 10 (*a*) (1992 ed.), states in pertinent part: "Every person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee."

[5]General Laws c. 4, § 7, Twenty-sixth (1992 ed.), states that public records shall include "all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of an agency, executive office, department, board, commission, bureau, division or authority of the commonwealth."

[6]General Laws c. 66, § 10 (*c*) (1992 ed.), states in pertinent part: "[T]here shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies."

[7]Clause Twenty-sixth (*f*) of G. L. c. 4, § 7 (1992 ed.), exempts "investigatory materials necessarily compiled out of the public view by law en-

exemption advanced by the district attorney recognizes that "disclosure of certain investigatory materials could detract from effective law enforcement to such a degree as to operate in derogation, and not in support, of the public interest." *Bougas* v. *Chief of Police of Lexington, supra.* The public policy concerns that support this exemption include "the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, [and] the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation." *Id.* at 62.

With these policy concerns in mind, this court held in *Bougas* v. *Chief of Police of Lexington, supra,* that certain police reports and letters from private citizens regarding a specific incident under investigation were exempt from public disclosure under cl. Twenty-Sixth (*f*) of G. L. c. 4, § 7. *Id.* at 66. Similarly, in *WBZ-TV4* v. *District Attorney for the Suffolk Dist.,* 408 Mass. 595, 602-604 (1990), we held that disclosure of a videotape of a lineup conducted for grand jury purposes, as well as a videotaped witness statement "could well have an adverse effect on effective law enforcement," and therefore, both were exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*).[8]

Therefore, recognizing the absence of a blanket exemption for police records or investigatory materials, this court has stated that a case-by-case review is required to determine whether an exemption applies, *Reinstein* v. *Police Comm'r of Boston,* 378 Mass. 281, 289-290 (1979), and that "[t]here must be specific proof elicited that the documents sought are of a type for which an exemption has been provided. On

---

forcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."

[8]In *Matter of a John Doe Grand Jury Investigation,* 415 Mass. 727, 729-731 (1993), we held that the same videotape of the lineup conducted for grand jury purposes and previously sought in *WBZ-TV4* v. *District Attorney for the Suffolk Dist.,* 408 Mass. 595, 602-604 (1990), should remain exempt from public disclosure even though the grand jury proceedings and the related criminal investigation had been concluded.

doubtful questions an in camera inspection *may be appropri-ate*" (emphasis added). *Bougas* v. *Chief of Police of Lexing-ton, supra* at 65-66. Therefore, given the precedent set forth in *Attorney Gen.* v. *Tufts, supra,* and *Worthington* v. *Scribner, supra,* and because it is unclear from the record whether the lower court judge found that the prosecutor's handwritten notes constituted public records under G. L. c. 66, § 10, or whether the district attorney met his burden of proof that the documents indeed were exempt from public disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*), we remand the case for a determination of these two issues.[9]

The case is remanded to a single justice of this court, where a judgment is to be entered vacating the order of the Superior Court judge and remanding the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[9]Nothing in this opinion should be understood as preventing inquiry of the prosecutor either by deposition or at trial concerning statements made by the victim in the course of the district attorney's investigation and pros-ecution of the crime.