378          436 Mass. 378 (2002)

Worcester Telegram & Gazette Corporation *v.* Chief of Police of Worcester.

WORCESTER TELEGRAM & GAZETTE CORPORATION *vs.* CHIEF
OF POLICE OF WORCESTER & another.[1]

Worcester. January 7, 2002. - March 21, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Public Records. Municipal Corporations,* Public record, Police. *Police,* Records. *Privacy.*

A Superior Court judge did not, in the circumstances, abuse his discretion in allowing limited disclosure, pursuant to G. L. c. 66, § 10, to a newspaper's legal counsel of copies of police department records on the internal investigation into complaints lodged by an individual who had alleged police misconduct, where the disclosure, which was subject to a detailed protective order, tested the department's claim that the requested documents were exempt from public disclosure as "personnel files" in accordance with G. L. c. 4, § 7, Twenty-sixth. [382-384, 385-386]

Discussion of several mechanisms sanctioned by this court for the review of "public records" to determine whether they are, in fact, exempt from disclosure pursuant to G. L. c. 4, § 7, Twenty-sixth. [384-385]

CIVIL ACTION commenced in the Superior Court Department on May 10, 2000.

A motion to permit inspection of public records pursuant to a protective order was heard by *James P. Donohue*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David M. Moore*, City Solicitor, for the defendants.

*Vincent F. O'Rourke, Jr.*, for the plaintiff.

SPINA, J. We are asked in this case to review an order of a Superior Court judge that compels the defendants, the chief of police of Worcester and the city of Worcester, to produce certain documents requested by the plaintiff, Worcester Telegram & Gazette Corporation, pursuant to G. L. c. 66, § 10, for inspection by their respective counsel, subject to a protective order. We affirm the order.

[1]City of Worcester.

Shawn Wilder filed a complaint alleging misconduct by Patrolman Michael A. Tarckini when, without cause or explanation, he detained and arrested Wilder at gunpoint.[2] The Worcester police department claimed to have conducted an internal affairs investigation of the allegations and found no cause to discipline Patrolman Tarckini. On October 1, 1999, pursuant to G. L. c. 66, § 10 (*a*),[3] the plaintiff requested that the defendants release "copies of Worcester Police Department records on the internal investigation into the complaints lodged by Shawn Wilder or on his behalf, stemming from an incident [on] May 1, 1999." The defendants responded that the records sought by the plaintiff were specifically exempt from public disclosure pursuant to one or more of the exceptions set forth in G. L. c. 4, § 7, Twenty-sixth (*a*), (*b*), (*c*), and (*f*).[4] The plaintiff then petitioned the supervisor of public records (supervisor), appeal-

[2]The complaint alleged that Wilder, who was suffering from a broken neck, was forced to lie face down on the pavement, at which time Patrolman Tarckini stepped with full force on the back of his neck, causing Wilder to lose consciousness. While unconscious, Wilder was handcuffed, arrested, and taken to the University of Massachusetts Medical Center for treatment of his injuries. No criminal charges were brought against Wilder. After investigation by the plaintiff, no record of the physical confrontation, of Wilder's injuries, or of his transport to the medical center appeared in the Worcester police department's public log for May 1, 1999.

[3]General Laws c. 66, § 10 (*a*), provides, in pertinent part: "Every person having custody of any public record, as defined in [G. L. c. 4, § 7, Twenty-sixth], shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee."

[4]General Laws c. 4, § 7, Twenty-sixth, provides, in pertinent part: " 'Public records' shall mean all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose, unless such materials or data fall within the following exemptions in that they are:

"(*a*) specifically or by necessary implication exempted from disclosure by statute;

"(*b*) related solely to internal personnel rules and practices of the government unit, provided however, that such records shall be withheld only to the extent that proper performance of necessary governmental functions requires

ing from the defendants' refusal to comply with its public records request. The supervisor ordered the defendants to release the requested records to the plaintiff, redacting only the names and identifying details of voluntary witnesses, complainants, and informants. The defendants refused to comply with the plaintiff's request and the supervisor's order.[5]

On May 10, 2000, the plaintiff filed in the Superior Court a complaint in the nature of a mandamus action pursuant to G. L. c. 66, § 10 (b),[6] and 950 Code Mass. Regs. § 32.08(2) (1993). The plaintiff sought to compel the defendants to release the following documents: (1) all complaints against the police department arising out of Wilder's detention and arrest; (2) all police officer, witness, and informant statements relating to such complaints; (3) all internal investigation reports relating to such

such withholding;

"(c) personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy;

" . . .

"(f) investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest."

[5]The defendants have asserted that on June 13, 2000, copies of Wilder's complaint, which had initiated the internal affairs investigation, were released to the plaintiff, together with a copy of the disposition letter sent to Wilder setting forth the results of the investigation. The names of the citizens, witnesses, and police officers involved were redacted.

[6]General Laws c. 66, § 10 (b), provides, in pertinent part: "A custodian of a public record shall, within ten days following receipt of a request for inspection or copy of a public record, comply with such request. . . . If the custodian refuses or fails to comply with such a request, the person making the request may petition the supervisor of records for a determination whether the record requested is public. Upon the determination by the supervisor of records that the record is public, he shall order the custodian of the public record to comply with the person's request. If the custodian refuses or fails to comply with any such order, the supervisor of records may notify the attorney general or the appropriate district attorney thereof who may take whatever measures he deems necessary to insure compliance with the provisions of this section. . . . [T]he administrative remedy provided by this section [shall not] in any way limit the availability of judicial remedies otherwise available to any person requesting a public record. If a custodian of a public record refuses or fails to comply with the request of any person for inspection or copy of a public record or with an administrative order under this section, the supreme judicial or superior court shall have jurisdiction to order compliance."

complaints; (4) all investigatory findings relating to such complaints; and (5) all documents relating to the disposition of such complaints.[7]

The plaintiff also filed in the Superior Court a motion to permit inspection of the public records sought, subject to a protective order. Relying on *Globe Newspaper Co.* v. *Police Comm'r of Boston*, 419 Mass. 852 (1995), it asserted that the circumstances of this case warranted inspection so as to test the defendants' claim that the requested documents were exempt from public disclosure.

The judge allowed the plaintiff's motion, pursuant to a detailed protective order. He acknowledged that the exemptions to public disclosure set forth in G. L. c. 4, § 7, Twenty-sixth, could apply, to some extent, to the documents requested by the plaintiff. However, the judge stated that he could not conclude, as a matter of law, that such documents were automatically exempt from disclosure without further inquiry into their precise nature. He opined that the custodian of public records could not be the sole arbiter of the applicability of any exemption to disclosure or the purpose behind G. L. c. 66, § 10, would be undermined.

The defendants filed in the Appeals Court a petition for interlocutory relief from the judge's order pursuant to G. L. c. 231, § 118, first par. A single justice of the Appeals Court denied the petition. The defendants filed a motion for reconsideration or, in the alternative, for an order reporting the following question to the full court: Whether *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield*, 431 Mass. 792 (2000), precludes disclosure of internal affairs files under G. L. c. 4, § 7, Twenty-sixth. On reconsideration, the single justice declined to grant

---

[7]In answering the complaint, the defendants admitted that the internal affairs file in this matter contained the following categories of documents: "1) the request for an investigation filed by an attorney representing a citizen involved with the police on May 1, 1999; 2) various reports of police officers to their superior officers; statements of witnesses; 3) notes of investigators on interviews and discussions; 4) memoranda analyzing the evidence gathered by the investigation; 5) memoranda between the police department and other city departments; 6) letters to the attorney for the complainant; 7) copies of [Criminal Offender Record Information] reports on various individuals; and, [8)] miscellaneous notes and documents."

the defendants' request for interlocutory relief, but she gave the defendants leave to file a notice of appeal of this issue in the trial court. We transferred the case to this court on our own motion.[8]

The defendants contend that *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield, supra,* is dispositive of the plaintiff's motion to permit inspection of records because it established that the "personnel files" exemption in G. L. c. 4, § 7, Twenty-sixth (*c*), applies categorically to documents created or assembled as part of an investigation into allegations of misconduct by a particular public employee (here, Patrolman Tarckini).[9] The defendants assert that there is no difference between the internal investigation conducted by the school superintendent in *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield, supra,* and the internal affairs investigation conducted by the chief of police of Worcester. Because, as the defendants argue, a "personnel file" is exempt from disclosure, no amount of review by the plaintiff will make the requested documents public records. The plaintiff, on the other hand, asserts that, in light of the defendants' contention that *all* of the internal affairs documents sought by the plaintiff are exempt as "personnel files," its counsel, at a minimum, should be allowed to have access to the requested documents to determine the accuracy of the defendants' claim of exemption.

The primary purpose of G. L. c. 66, § 10, is to give the public

[8]In a separate proceeding, the plaintiff has sought the release of 111 internal affairs files, consisting of all internal affairs complaints investigated to a conclusion in calendar years 1997 and 1998. By stipulation of the parties, this separate proceeding has been stayed and will be governed by the disposition of the present case.

[9]In its opposition to the plaintiff's motion to permit inspection of public records, the defendants did not rely on the "personnel files" exemption to public disclosure. Rather, the defendants claimed that release of the requested documents to the plaintiff, even under a protective order, would violate the interests protected by the investigatory and privacy exemptions set forth in G. L. c. 4, § 7, Twenty-sixth (*c*), (*f*). It was only after the issuance of our decision in *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield,* 431 Mass. 792 (2000), that the defendants sent a letter to the judge, who had not yet ruled on the plaintiff's motion, informing him that this case supported the defendants' arguments against the release of the documents requested by the plaintiff. The focus of the defendants' appeal is now on the "personnel files" exemption to public disclosure.

broad access to governmental records. See *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 436 (1983). To that end, disclosure is favored by the "presumption that the record sought is public." G. L. c. 66, § 10 (*c*). The purpose of G. L. c. 66, § 10, however, "should not be used as a means of disregarding the considered judgment of the Legislature that the public right of access should be restricted in certain circumstances." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, *supra*. In G. L. c. 4, § 7, Twenty-sixth, the Legislature has identified twelve categories of records, otherwise public, that are exempt from disclosure, including "personnel . . . files or information" and "investigatory materials necessarily compiled out of the public view by law enforcement . . . the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." The custodian of the requested record has the burden of proving, with specificity, the applicability of the relevant exemption. See G. L. c. 66, § 10 (*c*); *District Attorney for the Norfolk Dist.* v. *Flatley*, 419 Mass. 507, 511 (1995). To the extent that only a portion of a public record may fall within an exemption to disclosure, the nonexempt "segregable portion" of the record is subject to public access. See G. L. c. 66, § 10 (*a*); *Reinstein* v. *Police Comm'r of Boston*, 378 Mass. 281, 287-288, 290 (1979) ("[t]hat some exempt material may be found in a document or report of an investigatory character does not justify cloture as to all of it").

There is no "blanket exemption" to public disclosure for records kept by police departments or for investigatory materials. See *District Attorney for the Norfolk Dist.* v. *Flatley*, *supra* at 512-513 (judge must determine whether prosecutor's handwritten notes assembled after interview with rape victim constitute public records or are exempt as law enforcement "investigatory materials"); *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 65 (1976) (not every document placed within what may be characterized by police department as investigatory file necessarily exempt from public disclosure). Rather, the applicability of an exemption to public disclosure must be determined on a

case-by-case basis.[10] See *Reinstein* v. *Police Comm'r of Boston, supra* at 289-290. "There must be specific proof elicited that the documents sought are of a type for which an exemption has been provided" (footnote omitted). *Bougas* v. *Chief of Police of Lexington, supra* at 65-66.

This court has sanctioned several mechanisms for the review of "public records" to determine whether they are, in fact, exempt from disclosure pursuant to G. L. c. 4, § 7, Twenty-sixth. Where the applicability of an exemption is questionable, in camera inspection by a judge may be appropriate. *Id.* at 66. This court has stated, however, that "[i]n camera inspection and decision by the judge . . . [should] be used only in the last resort." *Reinstein* v. *Police Comm'r of Boston, supra* at 295. See *Bougas* v. *Chief of Police of Lexington, supra* at 65.

Review of "public records" can be accomplished through the use of an itemized and indexed document log in which the custodian sets forth detailed justifications for its claims of exemption. See *Reinstein* v. *Police Comm'r of Boston, supra* at 295. Opposing counsel then has an opportunity to review the log, as well as the claimed exemptions, and to eliminate from further consideration those documents, or portions thereof, that are not controverted, thereby narrowing the scope of the court's inquiry.[11] *Id.* The judge may employ the method of review he deems most advisable, and there is room for flexibility. *Id.* at 296.

A third avenue for the review of disputed "public records" is for a judge to permit counsel for the custodian and counsel for

---

[10]This court has noted that there is a distinction "between 'government surveillance or oversight of the performance of duties of its employees' and 'investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.' " *Reinstein* v. *Police Comm'r of Boston,* 378 Mass. 281, 291 (1979), quoting *Rural Hous. Alliance* v. *United States Dep't of Agric.,* 498 F.2d 73, 81 (D.C. Cir. 1974). Materials compiled as a result of routine monitoring by a police department of its employees will not usually fall within the scope of an investigatory exemption to public disclosure. See *Globe Newspaper Co.* v. *Police Comm'r of Boston,* 419 Mass. 852, 859 n.10 (1995). The internal affairs investigation herein did not constitute general monitoring by the police department of its employees.

[11]We are cognizant of the fact that this mechanism is not without its limitations in that the labeling and indexing of the documents for which exemption from public disclosure is sought may be misleading or erroneous.

the party seeking production to have access to the documents subject to an appropriate protective order. See *Globe Newspaper Co.* v. *Police Comm'r of Boston, supra* at 868. "The parties could then particularize their arguments to the judge, citing specific materials, or portions of materials, that are exempt or subject to disclosure. This would relieve the judge from a tedious examination of materials against generalized claims that exemptions are applicable." *Id.* at 868-869.

In order to determine whether the documents requested by the plaintiff were "public records" subject to disclosure or whether they fell into one of the exempt categories, as claimed by the defendants, the judge below decided to proceed with the third mechanism of review for the documents at issue. The documents requested by the plaintiff may, in fact, all be "personnel files" that would be exempt from disclosure. However, such documents also may be a combination of personnel information and other materials that would be segregable and subject to disclosure as "public records." Allowing the defendants to decide unilaterally, without any oversight, what documents are subject to disclosure and what documents are exempt is wholly inconsistent with the purpose of G. L. c. 66, § 10. Accordingly, given the options that were available to the judge for ascertaining whether the documents sought by the plaintiff were "public records," we conclude that he did not abuse his discretion in allowing limited disclosure to the plaintiff's counsel, subject to a protective order. See *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dep't of Mental Retardation (No. 1)*, 424 Mass. 430, 461 (1997) (scope and conduct of discovery within sound discretion of judge).

The defendants' reliance on *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield, supra,* is premature. In that case, the trial judge conducted an in camera review of the "public record" at issue, a disciplinary decision and report by the superintendent of Wakefield public schools regarding the performance of a Wakefield public school teacher. In concluding that the report, which resulted in the teacher's four-week suspension, constituted part of the teacher's "personnel . . . file[] or information" and was exempt from public disclosure, we knew the specific type of document that was at issue. See

G. L. c. 4, § 7, Twenty-sixth (*c*); *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield, supra* at 793, 797-799, and cases cited. Here, the custodian of the records made a blanket assertion that all documents created or assembled as part of the investigation were exempt. Thus, the applicability of the *Wakefield Teachers Ass'n* case and the "personnel files" exemption to public records disclosure can only be ascertained *after* the "records" have been reviewed to determine their precise nature. See *Globe Newspaper Co.* v. *Boston Retirement Bd., supra* at 435 ("Not every bit of information which might be found in a personnel or medical file is necessarily personal so as to fall within the exemption's protection"). Cf. *Department of the Air Force* v. *Rose,* 425 U.S. 352, 371, 376-377 (1976) (Congress did not create blanket exemption for personnel files under Freedom of Information Act, 5 U.S.C. § 552[b][6], on which G. L. c. 4, § 7, Twenty-sixth, is generally based). The documents requested by the plaintiff are not to be insulated from disclosure merely because they have been designated by the defendants as constituting a "personnel file." What is critical is the nature or character of the documents, not their label. See *Globe Newspaper Co.* v. *Boston Retirement Bd., supra* at 435.

The order allowing the plaintiff's motion to permit inspection of public records pursuant to the protective order is affirmed.

*So ordered.*