SUPERIOR COURT 
 
 DANIEL L. GOLDEN v. MIDDLESEX COUNTY DISTRICT ATTORNEY'S OFFICE

 
 Docket:
 2484CV01541-C
 
 
 Dates:
 February 28, 2025
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT MIDDLESEX DISTRICT ATTORNEY'S OFFICE'S MOTION TO IMPOUND RECORDS INDEX AND FOR A PROTECTIVE ORDER
 
 

             Defendant Middlesex County District Attorney's Office ("Middlesex DA" or the "Defendant") has filed a pair of motions addressed to the records index (the "Index") it has produced in an ostensible attempt to comply with the Court's January 30, 2025 Order for the Production of Withheld Records (the "Order") responsive to the Plaintiff's Public Records Law ("PRL") request.
BACKGROUND
            On January 30, 2025, following its review of briefing submitted in connection with Plaintiff's Motion to Compel Production of Withheld Records due to Mr. Golden pursuant to his PRL request and an in-person hearing addressed to that motion, the Court issued its Order for the production of the Index within 20 days. By that Order, the Court directed the Middlesex DA to prepare and turn over to Mr. Golden an index that identified all records in its possession that are
 
                                                            -1-
 
responsive to Plaintiffs PRL records request. In this connection, the Order specifically directed the Middlesex DA to set forth, on a record by record basis, the following information:
• The date the record was created;
• The author of the record;
• The recipients of the record;
• A description of the subject matter of the record, omitting personal identifiers (such as the names of suspects, witnesses and persons of interest) and other specific facts the disclosure of which would likely compromise the integrity of the subject homicide investigation);
• Any exemption to the PRL the Middlesex DA claimed applied to the referenced record; and
• An explanation of why the cited exemption applies to the record that is sufficiently detailed to permit a reasonable evaluation of the legitimacy of the exemption so claimed.
All responsive records not qualifying for a PRL exemption were to be turned over to Mr. Golden forthwith.
            In response to the foregoing, the Defendant filed a Motion to Reconsider the Order, arguing that even production of the documentary Index directed by the Court triggered the PRL's investigative exemption (G.L. c. 4, § 7,126(f)). In its motion, the Middlesex DA discharged a scattershot of reasons why even the exceedingly limited information revealed in the 34-year old records (concerning the murder of Mary Joe Frug) to be indexed threatened to compromise a still-open homicide investigation. The Defendant thereby sought leave to withhold in broad
 
                                                            -2-
 
stroke virtually all documents responsive to Mr. Golden's PRL request, and to do so on the basis of only summarily asserted grounds for exemption.
            In its February 19, 2025 Memorandum and Order on Defendant's Motion to Reconsider (the "Reconsideration Memorandum"), the Court categorically rejected the Middlesex DA's arguments, and directed this records-holder to produce the previously ordered Index. The Court reviewed at some length the governing PRL precedent in the Commonwealth, making clear that the plenary exemption from records disclosure claimed by the Middlesex DA in respect to the Frug homicide investigation was without basis in the law. (Reconsideration Memo., at pp. 2-4.) The Court further addressed the myriad theories conjured by the Defendant for effectively suppressing all inquiry into this more than three-decades old case, concluding that such theories bore little rational - much less demonstrated - relationship to the Frug homicide investigation, strained common sense to point of absurdity, and offended the very purposes of the PRL. (Id. at p. 5 and n.4.) To be blunt, the Middlesex DA did not remotely approach its burden of establishing that the ordered index or, by implication, the documents withheld were broadly entitled to the investigative exemption claimed, G.L. c. 4, § 7, 126(f). See iterum Rahim v. District Att'y for Suffolk Dist., 486 Mass. 544, 547 (2020). The reasons for these conclusions need not be rehearsed anew.
            The Middlesex DA now returns to Court with an Index that purports to comply with the Court's January 30 Order, and accompanies this Index with motions to impound the filing thereof and to subject Mr. Golden to a highly restrictive protective order as concerns its contents. For the reasons which follow, the Defendant's paired Motions to Impound and for a Protective Order shall be DENIED.
 
                                                            -3-
 
DISCUSSION
            The Court will not dwell over-long on the reasons for denying impoundment and the requested terms of protective order to the filing and disclosure of the Defendant's document Index. On its face, the Index mocks the Court's original Order of production, as expounded in its Reconsideration Memorandum, and makes virtually no effort to comply with the directives thereof. The Index consists of a 30-page spreadsheet that reflects no more than a Potemkin production of the information required by the Court. Indeed, the Index proffered is so rife with redaction regarding the referenced records that no substantive information whatsoever regarding the police investigation into the Frug murder can be extracted from it. This is hardly consistent with the purposes or precepts of the PRL. See Rahim. 486 Mass. at 555 (district attorney must "provide [ ] court with sufficient detail to conclude that disclosure of these materials would more likely than not prejudice effective law enforcement, and thus qualify for exemption (f)"). See also Mack v. District Att'y for Bristol Dist., 494 Mass. 1, 9 (2024) (purpose of PRL is provide public with "broad access" to information in order to ensure "public servants are carrying out their duties in an efficient and law-abiding manner"); Church of Scientology Int'l v. U.S. Dep't of Just., 30 F.3d 224,228 (1st Cir. 1994) ("basic purpose" of public records law "is to ensure an informed citizenry, vital to the functioning of a democratic society") (discussing "FOIA", federal analogue to the PRL).[1]
            As for the sprawling investigative exemption to which the Middlesex DA originally laid claim, the Defendant appears to have done little more than re-dress its failed arguments in only slightly different rhetorical clothing. Although the Middlesex DA has abandoned the revealingly
 
--------------------------------------------
 
[1] The Court would observe that a 34-year-old unsolved homicide inherently cries out for such an inquiry. See Louis D, Brandeis, Other People's Money, at 92 (Frederick A. Stokes Co. 1914) ("Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.").
 
                                                            -4-
 
political explanations it tendered previously in support of its claimed exemption, the Index put forward now in fact recycles most of the other arguments that the Court has rejected twice before. (Albeit in the form of a coded exemption key rather than text.) Thus, the Defendant continues to withhold documents by construing ,I 26(f) so expansively that it would dictate a blanket exemption from records production in almost any criminal investigation. The SJC has time and again inveighed against this very misconstruction of the PRL. See Mack. 494 Mass. at 13; Rahim, 486 Mass. at 552; Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378,383 (2002); WBZ-TV4 v. District Att'y for the Suffolk Dist., 408 Mass. 595,603 (1990); Reinstein v. Police Comm'r of Boston, 378 Mass. 281,289 (1979); Bougas v. Chief of Police of Lexington, 371 Mass. 59, 65 (1976).
            Particularly bewildering is the Middlesex DA's persistent refusal to recognize the hollowness of its arguments for applying a sweeping investigative exemption to documents that are now 34 years old. Thus, despite the ability to redact the names of witnesses, persons of interest and suspects (see Reconsideration Memo., at p. 2.), the DA's Coded Key #3 asserts that release of documents or information pertaining to such individuals "could compromise their willingness to cooperate in the investigation ... or coordinate his or her story with others, constructing a cohesive but false version of events ... and potentially let the culprit evade justice." (Index, at p. 2.) As the undersigned noted in his prior decision and this Court has held in other cases, there is little to no reason to believe that witness statements concerning a 30-plus year old murder, purged of personal identifying inf01mation, "would discourage other witnesses from coming forward"; rather, ''the opposite would more likely be true." Roman Cath. Bishop of Springfield v. Travelers Cas. & Sur. Co., No. 05-0602, 2008 WL 650409, at *4 (Mass. Super. Jan. 7, 2008) (Agostini, J.). Accord Reconsideration Memo., at p. 4, n.3.) Likewise, the notion
 
                                                            -5-
 
that anything short of wholesale exemption from disclosure will somehow permit a perpetrator to evade law enforcement in ways that the publicly available information about this homicide (and the passage of 34 years thereafter) has not already afforded is more than a little dubious.
            From there, the DA's asserted grounds for exemption grow increasingly fantastical. Coded Key #4 claims exemption to "information, the release of which may seem innocuous to a lay person, but which would reveal the focus, nature, and direction of the investigation."(Index, at p. 2.) The undersigned is admittedly at a loss as to what Coded Key #4 even means. If lay persons cannot deduce such information, how does disclosure disserve the public interest? And just who are the non-lay persons of concern in this case? More to the point, how will information about the "focus, nature, and direction of the investigation" in 1991, terms the DA employs with considerable vagueness and breadth, "probably so prejudice the possibility of effective law
enforcement" in an investigation it claims remains open and ongoing in 2025? See G.L. c. 4, § 7, ¶ 26(t). The Middlesex DA has not so much as attempted to answer these obvious questions, central though they are to any reasonable evaluation of the investigative exemption it claims.
            Coded Key #5 similarly avers that the release of certain information "would reveal resources devoted to the investigation," and "may show the level of commitment and priority given to the case by law enforcement." (Index, at p. 2.) So? Once again, the Middlesex DA says nothing about how release of any information that reflects the resources dedicated to the Frug investigation circa 1991, no matter how general, will intrude upon the integrity of the current investigation. To the contrary, common sense and experience suggest that a revelation of previously unexplored avenues, or insufficiently dedicated resources, is more likely to advance rather than hinder the current investigation. See, e.g. Roman Cath. Bishop of Springfield, 2008 WL 650409, at *4. More troublingly, Coded Key #5 echoes some of the DA's earlier political
 
                                                            -6-
 
objections (viz., that law enforcement might be criticized for giving the Frug case insufficient priority). As discussed in the Reconsideration Memorandum, passim, such concerns are diametrically at odds with the very purpose of the PRL. Shielding the actions or inactions of public servants from citizen scrutiny is not a legitimate ground for exempting documents from disclosure. Mack, supra at 9.
            Coded Key #6 claims protection over information "which would provide insights into the types and nature of techniques used in the investigation." (Index, at p. 2.) As noted previously, however, the Court anticipates that, with very few exceptions, the vast majority of "techniques" which may appear in the withheld records are either commonly known and expected methods of inquiry in a homicide investigation, potentially obsolete 34 years later, or otherwise unlikely to prejudice current law enforcement efforts. (See Reconsideration Memo., at p. 5 n.4.) Once again, the Middlesex DA supplies no substantive explanation of its concern.
            Coded Key #7 claims exemption over materials "which would reveal, by negative implication, sources and information that the government does not have . . . "(Index, at p. 2.) Given that the identifying information of witnesses and persons of interest will be subject to redaction, however, it strains the imagination to believe that a recipient will somehow divine conclusions about such police sources that are detrimental to the public interest. Further, to draw any negative inference as to information "the government does not have" would require the reader to assume that law enforcement has gathered no new information in the 30-plus years since the creation of the documents at issue, notwithstanding an investigation that it insists is open and ongoing.[2]
 
--------------------------------------------
 
[2] Perhaps unsurprisingly, the Middlesex DA does not identify any case precedent to support its claimed exemptions under Coded Keys #3 through #7.
 
                                                            -7-
            Compounding the inadequacy of the Middlesex DA's asserted grounds for exemption is the absence of any detailed application of same to the documents referenced in the Index. The Court repeatedly instructed this Defendant to provide a sufficiently detailed explanation to permit a reasonable evaluation of the exemption claimed. (See Memo. of Decision Mot. Compel, at p. 2; Reconsideration Memo., at p. 9.) In so doing, the Court directed the Defendant to the SJC's specific discussion of exemplar log entries. (Reconsideration Memo., at p. 9); Rahim, 486 Mass. at 553-55. The Index put forward by the Middlesex DA, however, reflects no serious attempt to comply with the Court's or the SJC's directives. Rather, the Index invokes, in talismanic fashion, Coded Key #'s 3 - 7 for nearly every document in the Index without further explanation. Even Coded Key #2, which claims exemption over "law enforcement reports" and has at least some arguable basis in law, is cited overbroadly and without adequate support. See id. at 555 (district attorney must "provide [] court with sufficient detail to conclude that disclosure of these materials would more likely than not prejudice effective law enforcement, and thus qualify for exemption (f).... [M]ere repetition of the word 'report' ... fails to add anything about the nature and scope of the materials' contents"). Further, the Index is riddled with "Document Description[s]" that are so heavily redacted that the nature of the materials is indiscernible or, on their face, do not support the cited exemption. As to the latter group, for example, consider: "MJF memorial program for Memorial Church, Harvard University" (Index, at p. 5); "Mary Joe Frug funeral service itinerary" (Index, at p. 7); and "various newspaper clippings [redacted]" (Index, at p. 7).
            While the largely indecipherable document descriptions arc many, the following are representative:
• "Handwritten notes re: [redacted] telephone conversation" (Index, at p. 5.);
 
                                                            -8-
 
• Application [redacted] and [redacted] certification [redacted]" (Index, at p. 5.);
• "List [redacted] highlights, markings and notation" (Index, at p. 6.);
• "Tables of information [redacted] for various dates in November 1991" (Index, at p. 6, four log entries);
• "[Redacted] article: [redacted]" (Index, at pp. 9-10, 21, eleven log entries);
• "[Redacted] photograph: [redacted]" (Index, at p. 1O);
• "Flyer from City [redacted] for 4/18/1991" (Index, at p. 1O);
• "[Redacted] declaration for [redacted] declaring [redacted]" (Index, at p. 14);
• "MSP report to file re: concerning [redacted]" (Index, at p. 20);
• "[Redacted] 10/20/1991 article [redacted]" (Index, at p. 21);
• "[Redacted] article by [redacted]" (Index, at p. 22).
And so on and so forth.
            In short, the Index produced by the Middlesex DA fails to comply with the Court's prior Order, and the various investigation-based arguments the Defendant puts forward in support of exemption, redaction and impoundment remain entirely unconvincing. Accordingly, the Defendant is hereby ordered to produce a fully compliant an unredactcd Index of documents responsive to Plaintiff's PRL request. The only permissible redactions shall be to conceal specific information that would either disclose or lead clearly to the disclosure of the identity of suspects, witnesses and persons of interest in the Frug investigation. The Defendant shall make this production within three business days hereof, or take an interlocutory appeal to the Appeals Court (in which event this Court shall stay its Order pending the resolution of such appeal).[3]
 
--------------------------------------------
 
[3] Pursuant to Mass. Trial Court Uniform Rule VII(2)(b), the Court Clerk shall withhold the Index from the public record of this case, and the Defendant shall have fourteen days to retrieve such materials from the Clerk or notify the Clerk that the materials may be filed in their entirety. Should the materials be filed, they will thereupon be placed in the public case record. The Clerk will destroy any materials that have not been filed or retrieved by the fifteenth day.
 
                                                            -9-
 
            Plaintiff Daniel Golden, having hereby "obtained relief through a judicial order," may, at his election, serve and file a motion pursuant to Superior Court Rule 9A for fees and costs incurred in pursuing same under G.L. c. 66, § 10A.
SO ORDERED.
/s/Robert B. Gordon
Justice of the Superior Court
February 28, 2025